SEMMES v. COLLINS.

[82 South. 145, Division A. No. 20780.]

ATTORNEY GENERAL. *Institution of suit. Civil liability. Statutes.*

Where the attorney-general acted with authority of law in bringing a suit, he cannot be held civilly liable for bringing such suit, even though in bringing the suit he acted wilfully or maliciously; the motive that impelled him being immaterial.

APPEAL from the circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Suit by John A. Semmes against Ross A. Collins. From a judgment dismissing the suit, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*F. V. Brahan,* for appellant.

Emminent counsel for appellee in their brief say: "That the original injunction suit brought by the state of Mississippi on relation of Ross A. Collins,

attorney-general was instituted at the special instance and request of two members of the capitol commission, who, under the law have control of all matters connected with said building and grounds," and they cite sections 191 and 196 of the Code of 1906, to show that the attorney-general "was acting strictly within the lines of the performance of the duties of his office." I endeavored in my original brief to demonstrate the opposite of this view, or contention, and to show that under the act creating the "Board of Capitol Commission," Acts 1916, chapter 112, p. 157, as passed by the legislature, the attorney-general had no legal right to interfere with, or enjoin them in the discharge of their duties, as they were amenable only, to the legislature for any wrongs, and were not subject to the power of courts; and, as to appellant Semmes, the attorney-general had no right to enjoin him; the state, as well as the commission, had ample, plain and adequate remedies against him at law, and under his contract, and bond. In addition to what I have said in my original brief, and, in reply to the brief of distinguished and able counsel for appellee, I call the courts attention to the lengthy and able opinion of Judge CALHOUN in the "Sandy Bayou Mandamus Case" in 87 Miss., beginning on page 125, and the opinion on page 143 et seq., which I submit is directly in point, and I believe is conclusive of the instant case. This able jurist, on page 153 of said 87 Miss., says: "Two other questions are propounded by counsel, viz: 'Is the board of control beyond the power of the courts in respect to the subject-matter of the contract in question? The contract being already made, is it valid under the averments of the petition?'" These questions are cognate and may be considered together. We shall answer the first, presuming, of course, that it has reference to the action of the board in the current case. If it should ever depart from the plain law—as, for instance, hire

out convicts, the act would be unconstitutional and void and subject to the power of the courts. The real and only question here can be whether its action may be controlled when it is in the exercise of the discretion committed to it by the legislature. Answering this, we say, "Undoubtedly, no." In such case the courts can no more substitute their discretion for that of the board than it could for that of the legislature; and this is true, in my judgment, even though corruption be charged. The correction of that must lie only in the ballot boxes and grand jury rooms. This position is impregnable and supported by decisions everywhere, and nowhere more than in this state. *Shotwell* v. *Covington,* 69 Miss. 738, 12 So. 260; *Board* v. *Grant,* Smed. & M. 90, 47 Am. Dec. 102; *Swann* v. *Buck,* 40 Miss. 290; *Swann* v. *Grey,* 44 Miss. 397; *Vicksburg R. R. Company* v. *Lowry,* 61 Miss. 102, 48 Am. St. Rep.; 76; *Mayor* v. *Rainwater,* 47 Miss. 550; *Monroe Co.* v. *Strong,* 78 Miss. 570, 29 So. 530; *Rotenberry* v. *Yalobusha Co.,* 67 Miss. 472, 7 So. 211; *Ham* v. *Levee Board,* 83 Miss. 556, 35 So. 943. The board of control is, beyond question a governmental board duly established by the legislature. To it, and to no other, is confined a determinative, judicial discretion. By Laws 1894, p. 66, ch. 75, sec. 3, after providing for the selection and purchase of land for penitentiary farms, this language is used: "and the board of control shall remove the convicts, or so many as may be profitably employed, to the land so purchased as soon as the same may be in a condition to receive them." In sec. 4, the board is directed to act in reference to the land bought "as soon as practicable." Section 5 is; "Should the board of control determine that all the convicts cannot be profitably worked on said lands and in industrial pursuits connected therewith, they are authorized to employ such convicts as cannot be used in such manner, not prohibited by the constitution, as may be

deemed most advisable and to the best interests of the state, but shall never part with their control and management." Laws 1900, p. 64, ch. 56, sec. 2, after providing for the purchase of other lands for a penitentiary farm in addition to those already owned by the state, proceeds thus: "Said land when purchased shall be occupied as soon as practicable by the board of control with as many convicts as may be necessary to occupy and manage the same." As late as 1902 (Laws 1902, p. 54, ch. 57, sec. 1), it is provided how money shall be disposed of which is received from sales of products of the 'state farm or farms worked by the state on the lease or share system.' It is too plain for argument that the legislature lodged the discretion as to all these matters, not in the judicial department; not in the executive department, but in the board of control, and with that board it must remain until the legislature makes some other disposition of it. In the condition where discretion was given the president of the board of supervisors to approve official bonds, this court said, in *Shotwell* v. *Covington,* 69 Miss. 738, 12 So. 260: 'Holding, as we must, that it is settled that the power given to the approving officer is judicial, we are unable to perceive upon what principle we can decide that, an arbitrary, or even corrupt abuse of the power can be corrected by mandamus.'

It is not for the judiciary to act because of evils which may flow from the unwise, or even improper, exercise of discretion in cases where it is lodged by the legislature. Evils and mistakes occur in all departments of government and in all human institutions. They are common even in the courts themselves in all states and in all countries. Does it follow, therefore that the departments and their legal agencies should be abolished? In private life every man is, and always was, bound by the acts of his agent in the exercise of discretionary powers granted to him.

Yet the courts cannot interfere, even there unless active fraud and collusion are shown. Shall men therefore be denied the right to appoint agents? But, conceding that the doubt expressed by Justice TRULY, in this concurring opinion referred to, as to the power of the court to intervene where corruption is shown to be well founded, still, here the answer must be the same, because the petition does not intimate any corruption. It implies the contrary, in that, when it makes the specific charge, it is that the board acted on the plea that the convicts can be more profitably employed on the Sandy Bayou place. The board, and no other power on earth, had the right to determine this and to say when the farms owned by the state were in shape to receive all the convicts without unnecessary loss to the state. If this be a public evil, it is the legislature alone which can correct it. The averments that the board is not having the timbered land 'opened as rapidly as practicable' and. that all the convicts can 'easily and profitably be employed' carry no legal force. They are not statements of facts, but merely conclusions of the pleader, not admitted by demurrer. Even under known and admitted conditions, whether a certain course is 'practicable,' or 'profitable,' or 'necessary,' will depend on the individual judgments of men. Whether it is practicable to employ all the convicts on the lands of the state, how many convicts are necessary to occupy the land, whether it is profitable or wise to destroy the timber or convert it into lumber, are matters submitted to the unrevisable discretion of the board of control."

From the foregoing, it is evident that the same principle of law, that controls the "board of control," created by the same legislature, as was the "board of commissioners," will govern and control the latter, and applying the opinion in the "Sandy Bayou Mandamus Case" to the instant case, certainly, it is con-

clusive of it. I, therefore, ask that the case be reversed, the demurrer be overruled, and the case be remanded for a proper trial on the merits.

*Robt. Powell,* for appellees.

The court will see from an examination of the record and declaration of appellant, with the exhibits thereto attached, that the original injunction suit brought by the state of Mississippi, on relation of Ross A. Collins, attorney-general, was instituted at the special instance and request of two members of the capitol commission, who, under the law, have control of all matters connected with said building and grounds.

By reference to section 191 and section 196 of the Code of 1906, we find the following: Section 191— "The attorney-general shall, at the request of the governor, or other state officers, in person or by assistant, prosecute suit on any contract in which the state is interested, upon a beach thereof, and prosecute or defend, for the state, all actions, civil and criminal, relating to any matter connected with either of the state offices; and he may require the service or assistance of any district attorney in or about such matters or suits."

Section 196—"The attorney-general shall also represent the state in person or by his assistant, as counsel, in all suits against the state, in other courts than the supreme court at the seat of government, and he shall, in like manner, act as counsel for any of the state officers, in suits brought by or against them in their official capacity touching any official capacity or trust, and triable at the seat of government; and he may pursue the collection of any claim or judgment in favor of the state outside of the state, or may, with the consent of the governor, employ counsel to assist in the collection thereof."

The injunction suit which was the basis of this action was brought to prevent a violation of the contract enter-

ed into by the state with contractors for repairing the old capitol. It will thus be seen that the attorney-general, in bringing this suit, at the instance of the Capitol Commissioners, was strictly within the lines of the performance of the duties of his office.

We lay down the proposition, which is amply supported by authority, "that no action will lie against an officer for maliciously doing his duty, since the law regards the doing of the duty, and not the motives for which and under which it is done."

This question is ably and elaborately discussed by Mr. Justice HARLAND in the case of *Harvey Spaulding* v. *Wm. F. Vilas* which the court will find reported in 161 U. S. Sup. Crt. Rep. 40, L. Ed. on page 780, *et sequiter,* where many authorities were cited and reviewed and the whole case thrashed out quite thoroughly, in the syllabus of that case, which was a suit against Postmaster General Vilas, for issuing a circular you will find: "That the head of an executive department cannot be held liable to a civil suit for damages on account of official communications made by him, pursuant to an act of Congress, and in respect of matters within his power by reason of any personal or even malicious motive which might be alleged to have prompted his action."

In discussing that case, after dealing with the non-liability of judges of superior and inferior courts, and the executive and judicial officers in general, the court says, on page 785, that: "We are of the opinion that the same general consideration of public policy and convenience which would demand for judges of superior jurisdiction immunity from civil suits, or damages arising from acts done by them in the course of the performance of their judicial functions, apply to a large extent to official communications made by heads of executive departments when engaged in the discharge of duties imposed upon them by law. The interests

of the people require that due protection be accorded to them in respect to their official acts. As in the case of a judicial officer, we recognize the distinction between an action taken by the head of a department in reference to matters which are manifestly and palpably beyond his authority and actions having more or less connection with the general matters committed by law to his control or supervison. Whatever difficulty may arise in applying these principles to particular cases in which the rights of the citizen may have materially been impaired by the inconsiderate or wrongful actions of the head of a department, it is clear and the present case requires nothing more to be determined —that he cannot he held liable to a civil suit for damages on account of an official communication made by him pursuant to an Act of Congress and in respect to matters within his authority, by reason of any personal motive which might have been alleged to have prompted his action, for personal motives cannot be imputed to duly authorize official conduct.. In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under any apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs, as entrusted to the executive branch of the Government, if he were subject to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if his acts are made with proper authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals.

In the present case, as we have found, the defendant, in issuing the circular in question, did not exceed his authority, or pass the line of his duty as postmaster general. The motive that compelled him to do that of which the plaintiff complains is therefore wholly immaterial. If we were to hold that the demurrer admitted for the purpose of the trial that the defendant acted maliciously, that could not change the law."

In the case of *Dawkins* v. *Paulette*, L. R. 5 Q. B. 94, which is cited in the *Vilas ase, supra,* and which was an action for libel, brought by an officer of the army against his superior officer, to recover damages, on account of a report made by the latter in relation to certain letters of the former, the defendant claimed that what he did was done in the course of, and as an act of, military duty. The case was heard on demurrer, and it was held by all of the justices (COCKBURN, C. J., alone dissenting) that the action would not lie. The case was first considered in the light of the pleadings and the admissions of the demurrer. Justice MELLON said: "I apprehend that the motives under which a man acts in doing a duty which it is incumbent upon him to do, make the doing of that duty not actionable, however malicious that they may have been. I thing that the law regards the doing of the duty and not the motives upon which, or under which, it was done. In short, it appears to me that the proposition resulting from the admitted statements in this record, amounts to this; does an action lie against a man for maliciously doing his duty? I am of the opinion that it does not."

Distinguished counsel, in support of his contention that an officer is bound for an act maliciously done, cited the following language, from the case of *Randall* v. *Brigham* 74 U. S. 7 Wall. 523-535: "In suits against such judges, they were not liable, but, unless perhaps were the acts in excess of jurisdiction or done maliciously or corruptly."

But counsel failed to cite the case of *Bradley* v. *Fisher,* 80 U. S. 13 Wall. 335, 350, 254, referring to the case of *Randall* v. *Brigham,* saying: "That the qualifying words above quoted were not necessary to a correct statement of the law, and that judges of courts of general or superior jurisdiction were not liable to civil suits for their official or judicial acts, even when such acts were in excess of their jurisdiction and were alleged to have been done maliciously or corruptly." The court will find both of these cases cited in the case of *William F. Spaulding* v. *Vilas, supra.*

The present case is one of first impression in this state, as is admitted by counsel upon the other side, but he attempts to cite certain cases from our supreme court, which he claims are analogous to the case in hand. But the court will find, upon examination of these authorities, that the officer was held liable, not because he maliciously performed a duty, but because, and solely because, he acted without any authority whatever. For instance, in the case of *Wilcox* v. *Williamson,* 61 Miss. 311, which is cited by appellant, the mayor of the town had a party arrested, fined, and imprisoned, without any warrant or affidavit whatever. In the case of *James Buckley* v. *W. W. George et al.,* 71 Miss. 580, cited by opposing counsel, the defendants had been removed from office and had no authority whatever in the premises. The case of *San Anderson* v. *R. F. Beck, Sheriff, et al.,* 64 Miss. 114, cited by counsel in his brief, was a case in which the sheriff was holding a prisoner for thirty days in jail, without any *mittimus* whatever and in positive violation of the statute. The court will readily see that these cases throw no light whatever on the present controversy.

In these cases, the officers defendant all acted without even the semblance of authority and, of course, could claim no protection on the ground of performing a public duty. In the present case, on the contrary, the

attorney general was acting strictly within the line of his official duty. The sections of the Code of 1906, above quoted, show not only that the attorney general had authority from state officers to bring this suit, but said sections, left him no discretion in the premises, as the wording of the statutes is "and he shall," and not, "may" do what the statute requires him to do.

We think that aside from the authorities which we have cited above, that a public officer should be unhampered in the discharge of his official duties, by the fear of harrassing suits, while lawfully carrying out the mandatory provisions of the statute laws of the state.

For these reasons, we think that the decision of the court below, in sustaining the demurrer to plaintiff's declaration was correct, and should be affirmed.

Sykes, J., delivered the opinion of the court.

The appellant, who was plaintiff in the circuit court, instituted suit against Ross A. Collins for about seven thousand dollars as actual and punitory damages alleging in his declaration, in substance, that Ross A. Collins, as Attorney General, without authority of law, without probable cause, willfully and maliciously instituted suit in the name of the state of Mississippi, ex rel. Ross A. Collins, Attorney General against John H. Semmes and others, to enjoin the defendants from doing some work in the repairing of the Old Capitol, alleged in the bill to have been contrary to the plans and specification adopted for the doing of this work. To the declaration the pleadings in the injunction suit are made exhibits. It appears from these exhibits that the injunction suit was brought at the instance and request of two of the members of the Capitol Commission. This injunction suit was, by the chancery court of Hinds county, decided adversely to the state and

appealed to this court. Upon motion this appeal was dismissed. The facts relating to this injunction suit are fully set forth in the report of this case in 118 Miss. 469, 78 So. 625.

In the instant case, the defendant demurred to the declaration, and the demurrer was sustained and the suit dismissed. From which judgment this appeal is prosecuted.

Under section 191, Code of 1906, section 3479, Hemingway's Code, the attorney general is authorized at the request of a state officer to prosecute any suit on a contract in which the state is interested, upon a breach thereof. Under this section, the Attorney General was authorized to institute and prosecute this suit at the request of any member of this commission. He therefore did not act without authority of law. Whether or not he acted willfully or maliciously would make no difference. As is well stated in the conclusion of the opinion in the case of *Spalding* v. *Vilas*, 161 U. S. 483, 16 Sup. Ct. 631, 40 L. Ed. 780:

"But if he acts having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals. . . . The motive that impelled him to do that of which the plaintiff complains is therefore wholly immaterial."

The judgment of the lower court is affirmed.

*Affirmed.*