396 A.2d 1193

**Francis Rick FERRI, Appellant,**

v.

**Dominick ROSSETTI, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1978.

Decided Jan. 24, 1979.

Francis Ferri, in pro. per.

Herman Kimpel, Dickie, McCamey & Chilcote, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from a per curiam affirmance by the Superior Court of an order of the Court of Common Pleas of Allegheny County sustaining the preliminary objections of appellee and dismissing appellant's complaint with prejudice. The appellee had been appointed under the Criminal Justice Act, 18 U.S.C. § 3006A, *et seq.*, to represent the appellant in connection with a federal grand jury investigation. Appellant avers that Dominick Rossetti, Esquire, appellee, lost a written agreement under which federal prosecutors agreed to confer immunity from prosecution on appellant, which immunity would have precluded a prosecution resulting in his conviction on a matter in federal court.[1] The order of

---

1. Appellant filed a similar type damage suit against the attorney that represented him in the criminal trial in the federal court. *Ferri v. Ackerman*, —— Pa. ——, 394 A.2d 553 (1978).

the court *en banc* dismissing the complaint stated as the reason for its action that due to appellee's immunity appellant had failed to state a cause of action. The Superior Court affirmed per curiam. This Court permitted review to consider the question of the immunity of defense counsel who had been assigned to represent a defendant in a federal criminal prosecution pursuant to the Criminal Justice Act.

In our recent opinion in *Ferri v. Ackerman*, 483 Pa. 90, 394 A.2d 553 (1978) we held that defense attorneys appointed pursuant to the Criminal Justice Act enjoyed an absolute immunity as to tort actions in the nature of malpractice, instituted in state courts. The unique issue presented by the instant appeal is whether the alleged negligent loss of a client's papers entrusted to his counsel is included within that immunity. Counsel has not offered nor has our research revealed a case in point; thus we must look to the rationale supporting the doctrine of immunity to ascertain whether it was intended to insulate the attorney from liability under such circumstances.

■ The immunity conferred upon a defense counsel appointed under the Criminal Justice Act, in a criminal federal trial is an extension of common law judicial immunity. *Ferri v. Ackerman, supra.* The motivating force supporting the concept of judicial immunity is the recognition of the necessity of preserving an independent judiciary, which will not be deterred by the fear of vexatious suits and personal liability, together with the manifest unfairness of exposing a judicial officer to the dilemma of being required to render judgment and at the same time holding him responsible according to the judgment of others. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872).[2] The United States Supreme Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) articulated the

2. One rationale offered is that judges "are only responsible to the people . . . for the manner in which they discharge the great trusts of their office" rather than to individuals who bring suit. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 350, 20 L.Ed. 646 (1872).

reasons for extending this immunity to all of the participants in the trial, as follows:

> The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location. As the *Bradley* Court suggested, 13 Wall. (80 U.S.), at 348–49, 20 L.Ed. 646, controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. *See Pierson v. Ray, supra,* 386 U.S. at 554, 87 S.Ct. 1213, 18 L.Ed.2d 288. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. *Id.* at 2914. (emphasis in original).

■ Absolute immunity may be invoked merely by showing that the official was acting within the scope of his authority. *Imbler v. Pachtman,* 424 U.S. 409, 421–424, 96 S.Ct. 984, 990, 47 L.Ed.2d 128, 138–140 (1976) (discussing the common law immunity of a prosecutor). *See also Sullens v. Carroll,* 446 F.2d 1392 (5th Cir. 1971); *Jones v. Warlick,* 364 F.2d 828 (4th Cir. 1966) (absolute immunity of federally appointed criminal defense attorneys). It is significant that although the prosecutor is for many purposes considered an executive official,[3] the federal courts have accorded the office the judicial type immunity. *See e. g., Yaselli v. Goff,* 12 F.2d 396, 406 (2d Cir. 1926), *aff'd per curiam,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). This bifurcated treatment provides further evidence of the strong federal view that the participants in the judicial process should be absolutely immune from common law tort actions.

Another significant indication of the strength of the federal view that participants in legal proceedings should be

---

**3.** Jurisdictions have differed on absolute immunity for executive officials. W. Prosser, *Handbook of the Law of Torts* §§ 114, 132. The United States Supreme Court's treatment of federal executive immunity has been described as being at best inconsistent. *See* Note, *Delimiting The Scope of Prosecutorial Immunity From Section 1983 Damage Suits,* 52 N.Y.U.L.Rev. 173, 176 n.25 (1977).

insulated from suit for their actions in connection therewith was revealed by the adoption of the common law theory of absolute immunity in the statutory causes of action under section 1983 of the Civil Rights Acts, 42 U.S.C. § 1983 (1970). Section 1983 created a federal damage action against anyone who acts under color of state law to deprive a person of his civil rights. The language of section 1983 does not mention immunity; thus the statute was susceptible to an interpretation which would not recognize the common law theory of immunity. *See e. g., Picking v. Penna. R.R.,* 151 F.2d 240, 250–51 (3d Cir. 1945), overruled on this point by *Bauers v. Hersel,* 361 F.2d 581, 584 (3d Cir. 1966), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Nevertheless, the federal system did extend absolute immunity in damage suits brought under section 1983 to judges, *Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and to prosecutors, *Imbler v. Pachtman, supra.*[4]

■ Appellant here is urging in essence that assigned defense counsel's immunity should not be absolute but rather qualified. His argument, that counsel's care of his client's papers entrusted to him during the period of representation be considered as an administrative responsibility for which counsel could be subject to a suit in damages, is an invitation to employ a functional approach in applying immunity for defense counsel. In view of the strong history in the federal system of affording the principal participants in a legal proceeding (i. e. judge, prosecutor, appointed defense counsel) with an absolute immunity in common law actions for damages any suggested qualification must be rejected.[5]

4. Cases finding the common law immunity extended to defense counsel under this statutory cause of action are difficult to find since most circuits have ruled that defense counsel does not act under color of state law, custom or usage, and for that reason cannot be sued in a 1983 action. *See e. g., Barnes v. Dorsey,* 480 F.2d 1057 (8th Cir. 1973); *Thomas v. Howard,* 455 F.2d 228 (3d Cir. 1972); *Peake v. County of Philadelphia, Pennsylvania,* 280 F.Supp. 853 (E.D.Pa.1968).

5. Although the Court in *Imbler v. Pachtman, supra,* did not unequivocally rule out the possibility of the functional approach with regard to the prosecutor's immunity under section 1983 actions, it did

For the foregoing reasons we are in agreement with the court *en banc*'s conclusion that appellee herein was immune and that the complaint should have been dismissed.

Order of the Superior Court affirming the court *en banc* affirmed.

O'BRIEN, J., and POMEROY, former J., did not participate in the decision of this case.

ROBERTS, J., filed a dissenting opinion in this case, joined by LARSEN, J.

ROBERTS, Justice, dissenting.

Just two months ago a majority of this Court decided that an attorney appointed to represent an indigent defendant in a federal criminal case is immune as a matter of federal law from all malpractice liability. *Ferri v. Ackerman*, 483 Pa. 90, 394 A.2d 553 (1978), cert. granted. I dissented from that decision on two grounds: (1) federal immunity does not insulate appointed counsel from his · client's malpractice suits; and (2) that a decision rendering a federal appointed counsel immune as a federal official could result in discrimination against indigent defendants. See *Ferri v. Ackerman,* supra (Roberts, J., dissenting). The majority's decision today holds appointed counsel in a federal criminal case immune from liability for allegedly losing a written agreement awarding his client complete protection from prosecution. I must again dissent.

It is conceivable that the majority, although it does not expressly discuss the question, would extend immunity to all federal defense counsel, appointed or not, thereby equalizing the effects upon indigent and non-indigent defendants.[1]

clearly indicate that the immunity was an absolute bar to common law damage suits.

1.  If, however, the majority does not envision such an equalization, the application of federal immunity to appointed defense counsel will have the effect of lowering the standard of care of such counsel and denying to indigent defendants a remedy apparently available to non-indigent defendants. As in *Ferri v. Ackerman,* supra, the majority chooses not to consider this consequence.

But this possible extension would not correct the majority's error in applying federal immunity to appointed defense counsel in the first place.

At the very core of the majority's reasoning is the view that the United States Supreme Court in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), impliedly extended absolute immunity to "all participants" in a federal criminal trial. The majority quotes references in *Butz* to "the various participants in judge-supervised trials" and to "advocates" in defining federal immunity. Such references do not, however, provide support for the view that an appointed defense attorney needs absolute protection from his own client's malpractice suits in order adequately to defend that client.

An appointed federal defense attorney does not serve as a federal official. His duties stem directly and solely from his professional obligations to act vigorously and capably in the defense of his client and not from any governmental responsibility. See *Thomas v. Howard,* 455 F.2d 228, 229 (3d Cir. 1972). Federal cases holding that state appointed defense counsel do not act under color of state law, e. g., *Barnes v. Dorsey,* 480 F.2d 1057, 1060–61 (8th Cir. 1973); *Thomas v. Howard,* supra, clearly instruct that federal appointed defense counsel do not serve a federal governmental role. In the absence of any legitimate official status the absolute immunity which the majority bestows is entirely without justification, for the rationale of immunity is to encourage those with some official governmental role to make discretionary judgments without fear of reprisal litigation. See *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). This theory forms the basis of decisions granting immunity not only to judges, but to prosecutors and grand jurors as well. As the United States Supreme Court observed in *Imbler v. Pactman,* 424 U.S. 409, 423 n.20, 96 S.Ct. 984, 991 n.20, 47 L.Ed.2d 128 (1976):

"It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors

and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well."

The class of beneficiaries of such immunity is thus narrowly circumscribed.

It is of course also true that defense counsel and witnesses receive protection from defamation actions for their statements in connection with a judicial proceeding. This privilege, as Dean Prosser points out, "covers anything that may be said in relation to the matter at issue, whether it be in the pleadings, in affidavits, or in open court." W. Prosser, *Handbook of the Law of Torts* § 114, pp. 777–78 (4th ed. 1971). This traditional common law immunity explains fully the United States Supreme Court's reference in *Butz* to the immunity of advocates and witnesses. Nothing in *Butz* suggests that the Court was impliedly acknowledging either under federal or common law that an appointed defense attorney is immune from suits brought by his own client for alleged acts of malpractice.[2]

The majority's analysis thus rests upon the mistaken assumption that the role of an appointed defense counsel is essentially like that of a judge, prosecutor, and grand juror and upon the erroneous view that the Supreme Court in referring to the immunity of advocates and witnesses was

**2.** The Court in *Butz* stated:
 "Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. . . . Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error."
 Id., —— U.S. at ——, 98 S.Ct. at 2914. The Court's reference to factors enhancing the reliability of the statements of counsel and witnesses in open court reveals clearly that the Court's discussion of the immunity of these participants encompassed only the traditional immunity from defamation actions. That such a common law immunity exists to facilitate the judicial factfinding role provides no basis for the absolute immunity recognized by the majority in this case.

considering more than the traditional privilege from defamation actions. I cannot join in the majority's analysis.

LARSEN, J., joins in this dissenting opinion.