406 A.2d 735

Paul A. REESE, Appellant,

v.

Theodore S. DANFORTH, Public Defender, Lancaster County, and Mary Ann Motter, Law Clerk, Public Defender's Office, Lancaster County, and Grant H. Fleming, Assistant Public Defender, Lancaster County.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1978.

Decided Oct. 9, 1979.

480

William W. Boyd, Xakellis, Perezous & Mongiovi, Lancaster, for appellant.

Henry S. Kenderdine, Jr., Alspoch & Ryder, Lancaster, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.*

Appellant Paul A. Reese instituted an action in trespass alleging negligent representation afforded to him by appellees, Theodore S. Danforth, a county public defender and two members of his staff, including a law student certified under Pa.B.A.R.11. The alleged negligent representations occurred during a proceeding brought against Mr. Reese by the Administrator for Lancaster County pursuant to the Mental Health and Mental Retardation Act of 1966.[1] The proceeding initially started as a hearing under § 406(a) of the Act and ultimately concluded in a commitment to a psychiatric hospital pursuant to § 405. As a result of that action, Reese was confined involuntarily for a period of seven (7) days and is now seeking compensatory and punitive damages alleging that he was improperly confined as a result of the negligent representations provided him by the appellees.

The appellees moved for judgment on the pleadings on the grounds that they were immune from suit as a matter of law in that they were public officers by virtue of the Public Defender's Act of December 2, 1968[2] acting within the scope of a statutorily mandated duty to supply legal counsel to

* Supplemental briefs were filed on February 22, 1979, and the case was assigned to this writer on February 27, 1979.

1. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. I, § 101, 50 P.S. §§ 4101 et seq.

2. Act of December 2, 1968, P.L. 1144, No. 358, §§ 1 et seq.; 16 P.S. §§ 9960.1 et seq. (Supp. 1979–80).

482

indigents. The motion was granted by the Lancaster County Court of Common Pleas based on its determination that the Public Defender's Act conferred official status on public defenders, and, thus, immunized them from liability for negligent conduct when acting within the scope of their duties.[3] This decision was affirmed *per curiam* by the Superior Court without an opinion,[4] and we granted allocatur.

We begin by observing that the question of immunity here presented turns on the law of *this Commonwealth* concerning official immunity. Precedents drawn either from the Federal common law of immunity, which treat these questions as part of the doctrine of judicial immunity, *see Ferri v. Ackerman,* 483 Pa. 90, 394 A.2d 553 (1978), or from the Federal common law of what constitutes state action under 42 U.S.C. § 1983,[5] are not controlling in the instant case.

Prior to this Court's decision in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), modifying the doctrine of officials' immunity, the law was clear that public officials were entitled to some immunity from suits arising out of their negligent conduct. "High public officials" were entitled to absolute immunity from civil suits, *see Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952), while "lower public officials" were only granted a conditional or qualified immunity that disappeared in the face of allegations of wanton, reckless, intentional, and malicious conduct outside the scope of the official's authority, *see Ammlung v. Platt,* 224 Pa.Super. 47, 302 A.2d 491 (1973). Although there was some confusion as to whether an individual was a high or low public official,[6] it was clear that a mere public employee

3. Decision reported at 65 Lanc.L.R. 207 (1976).

4. 241 Pa.Super. 604, 360 A.2d 629 (1976).

5. *See* Note, Liability of Public Defenders under section 1983; *Robinson v. Bergstrom,* 92 Harv.L.Rev. 943 (1978).

6. *Compare Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968) (township supervisors are high public officials and receive absolute immunity), *with Yealy v. Fink,* 43 Pa. 212 (1862) (township supervisors given only conditional immunity). *See also, American Pavement Co.*

having no policy-making functions was not entitled to *any* immunity, whether it was absolute or conditional, *see Meads v. Rutter,* 122 Pa.Super. 64, 184 A. 560 (1936). It is therefore appropriate to begin our inquiry in this appeal by first determining whether a public defender and his assistants are public officials entitled to some sort of immunity or whether they are mere public employees to whom no immunity flows.[7]

In order to be public officers, appellees would have to occupy public offices. In *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 358, 22 A.2d 686, 688 (1941), we defined what comprises a public office:

> "To constitute a public office, it is essential that certain independent public duties, a part of the sovereignty of the State, should be appointed to it by law, to be exercised by the incumbent in virtue of his election or appointment to the office thus created and defined . . .;" *Kosek v. Wilkes-Barre Twp. School Dist.,* 110 Pa.Super. 295, 301, 168 A. 518.

In *Finley v. McNair,* 317 Pa. 278, 281, 176 A. 10, 11 (1935), we said that the question of whether an individual is a public officer

> . . . must be determined by a consideration of the nature of the service to be performed by the incumbent, and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one: *Richie v. Philadelphia,* [225 Pa. 511, 515, 74 A. 430 (1909)]. Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a

*v. Wagner,* 139 Pa. 623, 21 A. 160 (1891) (discussing the distinction between discretionary and ministerial duties).

7. Because we find that appellees are not public officers and therefore not entitled to immunity under prior law, it is obvious that the principles set forth in *DuBree,* which contracted rather than expanded immunity, are satisfied.

fixed period, acts under oath, gives a bond, and the source or character of the compensation received.

■ The present problem is similar to that facing the Court in *Commonwealth ex rel. Foreman v. Hampson*, 393 Pa. 467, 143 A.2d 369 (1958), where we held that a county solicitor is an appointed professional employee and not a public officer within the contemplation of the residence requirement of article XIV section 3 of our state constitution. There the Court quoted and applied that portion of the *Richie* opinion set forth above, and stated:

> A county solicitor is not appointed for any fixed term or certain tenure but occupies his position at the will of the commissioners who appoint him. No functions of government are delegated to him. Nor can he lawfully exercise any powers of sovereignty. He serves as counsel to the commissioners in the discharge of their public duty just as any privately employed attorney serves his clients.

*See also, Wiest v. Northumberland County*, 115 Pa.Super. 577, 580, 176 A. 74 (1935) (holding that a county solicitor is not a public officer within the meaning of article III section 13 of the constitution). Although individuals may occupy positions which are publicly-funded and authorized by statute, as do public defenders and county solicitors, this does not compel the conclusion that they are public officers. Instead, it is the nature of the office, the powers wielded, and the responsibilities carried out that are the key considerations. Thus, although a county solicitor was not a public officer within the meaning of the constitutional provision involved in *Foreman*, we had earlier held that district attorneys were public officers within the meaning of that section. *Lennox v. Clark*, 372 Pa. 355, 373, 93 A.2d 834 (1953). Obviously, a district attorney does exercise powers of sovereignty in the course of executing governmental functions, whereas a county solicitor does not.

In comparing the office of public defender to that of county solicitor, it is apparent that the public defender's function is even more akin to the role of the privately employed attorney than is the solicitor's. This is because the

defender's duty is to represent his clients even as against the interests of the county when it seeks to prosecute an indigent for violation of a county ordinance or, as here, when it seeks to commit an indigent for psychiatric observation. *See also,* A.B.A. Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 1.1(b) (App. Draft, 1971). The overriding duty of zealous representation of a client's interest attaches to the role of the public defender and had led the Superior Court to liken the performance of this duty by the defender to the performance of privately retained counsel. *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927, 931 (1977).

The relationship between the county and the public defender is similar to that between an independent contractor and the party contracting for his services. The county has no control over the manner of representation given indigents by the defender. The nature of the work involves the attorney-client relationship and is of a type that precludes outside interference or direction by the county. The attorney requires special skills and the practice of law is a distinct occupation or business from that in which the county primarily engages. *Compare Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 370–71, 243 A.2d 389 (1968); 1 Restatement (Second) of Agency (1958) § 220. In fact a comment to section 223 of the Restatement speaks of attorneys as independent contractors. *See* 1 Restatement (Second) of Agency § 223 comment a.

Another jurisdiction considering the question of whether a public defender is a public officer under state law has cogently observed:

Even though the state must insure that indigents are represented by competent counsel, it can hardly be argued that the actual conduct of the defense of an individual is a sovereign or governmental act. The principle that the state cannot function both as prosecutor and defender is so deeply rooted in our system of justice as to require no citation. The public defender when he represents his client is not performing a sovereign function and is there-

fore not a public or state official to whom the doctrine of sovereign immunity applies.

 *Spring v. Constantino,* 168 Conn. 563, 362 A.2d 871, 875 (1975). So, too, in this jurisdiction, official immunity is accorded to protect "society's interest in the unfettered· discharge of public business." *Montgomery v. Philadelphia,* 392 Pa. 178, 183, 140 A.2d 100, 103 (1958). While the availability of court-appointed counsel to represent indigents is indubitably the public business, we hold that once the appointment of a public defender in a given case is made, his public or state function ceases and thereafter he functions purely as a private attorney concerned with servicing his client. His professional relationship with his client takes on all the obligations and protections attendant upon a private attorney-client relationship except one: the public pays his fee. In this respect, he is like the physician rendering professional services which are paid for out of public funds and, like that physician, he ought to be subject to liability for tortious conduct. *E. g., Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977); *U. S. ex rel. Fear v. Rundle,* 506 F.2d 331 (3d Cir. 1974).

We are presented with two public policy arguments against civil liability of public defenders for malpractice. First, the need to recruit and hold able lawyers to represent indigents. Second, the need to encourage counsel in the full exercise of professionalism, *i. e.,* the unfettered discretion in the light of training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a particular litigant as to how his interests may best be advanced. *See, Minns v. Paul,* 542 F.2d 899 (4th Cir. 1976); *Brown v. Joseph,* 463 F.2d 1046 (3d Cir. 1972).[8]

**8.** In each case cited by the appellees in their brief for the proposition that public defenders are entitled to immunity, none of the findings of immunity were necessary to exculpate the attorney since there was substantial authority in each circuit that either a private or court-appointed attorney does not act under color of law, and, therefore, Federal jurisdiction under the Civil Rights Act which was the asserted jurisdiction predicate for each suit did not attach. *See* Mallen and

■ These arguments restate objections made and rejected by this Court in other cases in which immunity was invoked. The general rule in this Commonwealth is that liability follows tortious conduct, and, thus, immunity is an exception. *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). Whether a particular individual claiming official status is accorded immunity depends upon "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery v. City of Philadelphia,* 392 Pa. at 186, 140 A.2d at 105. It does not turn on the putative effect of the imposition of the financial burdens attendant to tort liability. Thus, we observed in *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 503–504, 208 A.2d 193, 202 (1965):

We have a duty to perform and that is to see that justice, within the framework of the law, is done. Our function is to decide cases as they come before us on the pertinent facts and law. What could happen in the event that plaintiff obtains a verdict is not an issue here.[9]

■ Appellees, in the instant case, do not serve as public administrators with policy-making functions and the duty to act according to directives handed down to them by other

Levitt, Legal Malpractice § 175 (1977) discussing *Minns v. Paul,* 542 F.2d 899 (4th Cir. 1976); *John v. Hurt,* 489 F.2d 786 (7th Cir. 1973); *Brown v. Joseph,* 463 F.2d 1046 (3d Cir. 1972). Accordingly, the observations on immunity in those cases were unnecessary to the disposition of the case and, in any event, not controlling on the state law of immunity.

The opinion of the Third Circuit upon which appellees place great reliance has been criticized both for its unsoundness as policy and for its lack of craftsmanship in that it ignored an unreversed lower court opinion which held to the contrary. *See,* Mallen, The Court-Appointed Lawyer and Legal Malpractice-Liability or Immunity, 14 Am.Crim. L.Rev. 59 (1976).

9. *See also, Meads v. Rutter,* 122 Pa.Super. 64, 69, 184 A. 560, 562 (1936), where the court stated:

An employee or officer of the Commonwealth is not a member of a privileged class—exempt from liability for his individual tort. It would be unfortunate, indeed, if one, who has sustained a wrong by an individual, would be remediless and not able to sue him the same as any other citizen because he was an agent, officer, or employee of the Commonwealth. Like all others, he must personally answer for his wrongful acts, . . .

public officials. *Cf. Montgomery v. Philadelphia, supra; Spring v. Constantino, supra.* The scope of authority devolved upon them by statute is coextensive with that of a trained professional representing a client in a particular case, not that of an elected or appointed public official accountable to the community at large. *Cf. Yealy v. Fink,* 43 Pa. 212 (1862); *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968).

We are called upon here by the appellees to read into a statute implementing a constitutionally prescribed duty to furnish indigents with court-appointed counsel, an unexpressed public interest in limiting liability for professional malpractice visited upon indigents thus represented. We are asked to rule that this potential liability outweighs the interest of the indigent client in the provision of legal services under the same standards as those applicable in other attorney-client situations. Appellee's contention is tantamount to a suggestion that we distinguish between groups of plaintiffs based on economic status, thus, denying an indigent the tort relief which would be available to the paying client in a similar fact situation. Such a distinction would raise troublesome equal protection questions were we to adopt it. *See,* Comment, Liability of Court Appointed Defense Counsel for Malpractice in Federal Criminal Prosecution, 57 Iowa L.Rev. 1420 at 1425–1427. It is inconsistent with our belief that the quality and extent of the services or ethical responsibilities of public defenders and court-appointed counsel should turn on or be affected by the source of their compensation, or the economic status of their clientele. *See,* Mallen, The Court-Appointed Lawyer and Legal Malpractice—Liability or Immunity, 14 Am.Crim.L.Rev. 59 (1976); A.B.A. Standards Relating to the Defense Function § 1.1 comment f. (App.Draft, 1971).

For the same reason, we must reject the argument that the availability either of habeas corpus proceedings based on incompetence of counsel, or a disciplinary action against the public defender under the Canons of Ethics and the Rules of

Disciplinary Enforcement[10] to vindicate the aggrieved indigent's interests without recourse to civil liability. Here again, we can conceive of no principled basis for differentiating between public defenders and privately retained and paid counsel whose clients are also afforded these remedies, plus the civil action for damages, in appropriate circumstances.

Accordingly, the order of the Court of Common Pleas of Lancaster County must be reversed and the case remanded for proceedings consistent with this opinion.

ROBERTS, J., filed a concurring opinion in which LARSEN, J., joined.

MANDERINO, J., filed a concurring opinion.

O'BRIEN, J., filed a dissenting opinion in which EAGEN, C. J., joined.

POMEROY, former J., did not participate in the decision of this case.

ROBERTS, Justice, concurring.

The public interest is not served by insulating public defenders from claims of negligence. Thus, our established caselaw precludes a grant of immunity to these defendants. See *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978).

My recently expressed view as to the inappropriateness of immunity for appointed counsel is equally applicable here. Like appointed counsel, the public defender "does not need any more discretion, freedom, or encouragement to exercise his professional judgment and skill than does privately retained counsel." *Ferri v. Ackerman*, 483 Pa. 90, 100, 394 A.2d 553, 558 (1978) (Roberts, J., joined by Larsen, J.,

10. *See*, Public Defender Act, Act of December 2, 1968, P.L. 1144, No. 358, § 4, 16 P.S. § 9960.4 (power of Board of County Commissioners to fire public defender).

dissenting), cert. granted, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

Litigants represented by the public defender are entitled to the same quality of legal assistance required of privately retained counsel. Immunity would only permit less zealous representation and deny to those who cannot afford private counsel an equal remedy for their injuries. See *Ferri,* (dissenting opinion), supra.

Accordingly, I agree that the complaint against these defendants was improperly dismissed.

LARSEN, J., joins in this concurring opinion.

MANDERINO, Justice, concurring.

I join in the opinion of Mr. Justice Nix except to the extent that it relies on *Lennox v. Clark,* 372 Pa. 355, 93 A.2d 834 (1953), and suggests that a district attorney represents the sovereign in some way different from the public defender. Both the district attorney and the public defender are mandated by the sovereign to see that justice is done within the established rules of fairness. The district attorney, like the public defender, should not be controlled by anyone. The sovereign's interest is served just as much when the public defender properly performs his duties as it is when the district attorney properly performs his. Both are independent entities whose duty is to see that the accused is treated fairly.

O'BRIEN, Justice, dissenting.

The questions presented by those cases raising issues of immunity-from-liability, whether sovereign, official or judicial, are, in my view, far from well-settled. This Court has, in the past, striven to categorize public servants in order to determine what, if any, immunity inheres in their offices.[1] The legislature, too, has engaged in classification of employ-

1. See, e. g., *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952); *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968).

ees as an approach to the immunity problem.[2] Most recently, in *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978), we announced we would abandon a classification analysis "in favor of rules which, though requiring case-by-case determinations, more often produce equitable results." *Id.*, 481 Pa. at 547, 393 A.2d at 296.[3]

Hitherto we have not been called upon to determine whether the public defender is a "high public official", "low public official," or a public official at all. The majority today determines that public defenders are not public officials. Because I consider it unnecessary in view of that portion of *DuBree*, which dealt with individual, named defendants, I would express no view concerning the precise status of the office of public defender. In light of our expressed disfavor with analysis by classification, and in view of the fact that the majority's decision in the instant case is founded, ultimately, upon considerations of public policy, my analysis of the policy issues leads me to a different result.

It is appropriate initially to note that I consider the majority correctly chose to base its decision upon considerations of public policy. In indicating that the immunization of public defenders is pregnant with "troublesome equal protection problems," however, I believe the majority needlessly clouds the analysis (Majority Opinion, ante, at 740). The equal protection clause does not compel the result reached by the court in the instant case.

It is, of course, true that if public defenders are immune from civil liability, a cause of action available to persons sufficiently affluent to secure private representation will be

2. "Political Subdivision Tort Claims Act." Act of November 26, 1978, P.L. 1399, No. 330, § 101 et seq., 53 Pa.C.S.A. §§ 5311.101 et seq. (1979–80 Supp.)

3. While in *DuBree*, I considered that permitting a suit against the Commonwealth represented a judicial usurpation of the legislative function, I agreed with the Court that the propriety of a suit against an individual named defendant is not amenable to a simple analysis by classification.

foreclosed to persons not so happily circumstanced. But as the younger Mr. Justice Harlan accurately opined:

"The Equal Protection Clause does not impose on the States 'an affirmative duty to lift the handicaps flowing from differences in economic circumstances.' To so construe it would be to read into the Constitution a philosophy of leveling that would be foreign to many of our basic concepts of the proper relations between government and society. The State may have a moral obligation to eliminate the evils of poverty, but it is not required by the Equal Protection Clause to give to some whatever others can afford." *Douglas v. California*, 372 U.S. 353, 362, 83 S.Ct. 814, 819, 9 L.Ed.2d 811 (1963). (Harlan, J., dissenting) (footnote omitted.)

Mr. Justice Powell, speaking for the court, noted in *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), that "at least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages." Id., 411 U.S. at 24, 93 S.Ct. at 1291.[4]

We are presented with no authority for the proposition that unimpaired access to state courts for all purposes[5] is a constitutionally guaranteed right. Consequently, I am not persuaded that state action, or a state policy, which results in the creation of two cognizable classes of persons, and in the furtherance of a legitimate state interest forecloses to one of those classes access to the state courts to advance a private claim, is violative of the equal protection clause. *See, Cohen v. Beneficial Loan Corporation*, 337 U.S. 541, 552, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The majority does not advance, nor in my view could they, any other constitutional

4. *See, also, McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961): "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

5. *Compare, Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and *Cohen v. Beneficial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

provision as requiring the result reached today; the proper basis for decision in the instant case, then, is public policy.

Two essentially separate questions are posed by the majority: first, whether there is any compelling justification for treating the public defender in a different fashion from privately retained counsel; and second, whether sound considerations of public policy warrant immunizing the public defender from civil liability. Both of these questions the majority answers in the negative. I would answer both affirmatively.

I find one compelling justification for treating the public defender in a different fashion from privately retained counsel which arises from the unique nature of the relationship between the public defender and his client. It is, perhaps, helpful here to recall that legal malpractice originated as a tort *ex contractu*, with the claim arising when counsel was in breach of the contract, express or implied, with his client. Early cases often held that an action against an attorney for negligent representation must sound in contract. *See, e. g., Goodman & Mitchell v. Walker*, 30 Ala. 482 (1857).[6] The contract origins of legal malpractice remained apparent in the lingering requirement that to bring the action one must have been in privity with the attorney. *Buckley v. Gray*, 110 Cal. 339, 42 P. 900 (1895).[7] Indeed, as courts endeavored to expand the scope of potential liability for negligent representation, they often did so in contract language.

"We conclude that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract . . . may recover as third-party beneficiaries." *Lucas v. Hamm*, 56 Cal.2d 583, 591,

6. Although Alabama no longer insists upon this requirement, *Goodman & Mitchell* is historically informative. See e. g. *Rhine v. Haley*, 238 Ark. 72, 378 S.W.2d 655 (1964).

7. The privity requirement is no longer the law in California, see *Lucas v. Hamm,infra*, but is illustrative of the contractual basis of the tort of legal malpractice.

494

15 Cal.Rptr. 821, 825, 364 P.2d 685, 689 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).

Even now the action may be brought as one sounding in either tort or contract. *See, e. g., Barrett v. Burt,* 250 F.Supp. 904 (S.D.Iowa 1966); *Goodstein v. Weinberg,* 219 Va. 105, 245 S.E.2d 140 (1978).

"Although the liability of an attorney on the ground of negligence is ordinarily enforced by an action on the case for negligence in the discharge of his professional duties, the liability in reality rests on the attorney's employment by the client and *is contractual in its nature.*" 7 C.J.S. Attorney and Client § 140, p. 978, quoted with emphasis in *Chicago Title Insurance Company v. Holt,* 36 N.C.App. 284, 244 S.E.2d 177 (1978).

It seems to me, then, that one important justification for dealing with public defenders differently from privately retained counsel is immediately evident: the public defender, unlike his private counterpart, is, in a real sense, not free to contract with his client. The case of any person, no matter how unpopular or offensive he, his opinions or his cause may be, if assigned to the public defender must, and we would not argue otherwise—should, be advocated as strenuously as it can be. But in contrast to the private attorney who, notwithstanding his status as an officer of the court, and his obligations to the legal profession, is nevertheless an entrepreneur, the public defender is discharging society's appreciated obligation to provide competent legal counsel to indigent persons. He cannot assay the likelihood that the frustration of a client's cause may lead to recriminations and, ultimately, litigation; he cannot weigh the threat to his own energies and assets posed by the likelihood of suit; he cannot analyze the litigious propensities of his client; he cannot even consider the merits of his client's case, and if these assessments are not favorable, tell him to find another lawyer.

Apt analogy may be found in the English system. There, although solicitors may be sued for malpractice, barristers may not. The immunity of barristers from suit was general-

ly considered to be founded in counsel's inability to contract with his client. Indeed, "counsel usually perform their duties without having a legal title to remuneration," and barristers could not sue for their fees. *Veitch v. Russell*, 3 Q.B. 928, 936 (1842). Solicitors, on the other hand, were not similarly inconvenienced.

The inability to contract rationale was abandoned in *Rondel v. Worsley*, 1 A.C. 191 (1969), but barristers' immunity was retained, now based upon considerations of public policy. Five opinions were filed expressing different views of which tenets of public policy best support barristers' immunity, but the court generally agreed they were three: "(1) The need that counsel should be able to conduct litigation fearlessly and independently; (2) the duty of a barrister to accept any client, however refractory, who sought his services; and (3) the public's interest in avoiding the retrying of litigation." Kaus and Matten, The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice," 21 U.C.L.A. L.Rev. 1191, 1192, n.5.

I find the evolution of English thought on the instant question persuasive. The inability to contract which encumbers barristers and, in a sense, public defenders, while insufficient as a justification for immunity from liability, is nevertheless enough to warrant their classification distinct from their counterparts who are free to contract with a client or not, as they may choose.[8] But immunity from civil liability, to be acceptable, must rest on weightier considerations of policy.

The federal cases are inapposite. Nearly all arise under 42 U.S.C. § 1983, and the majority is unquestionably correct that the law emerging from those cases cannot control the

8. The notion that persons with certain necessary skills may merit some special consideration when placed in circumstances where their skills are required and they are without option to exercise or refuse to exercise those skills, is not totally alien. Witness, for example, so-called "good Samaritan" legislation which immunizes physicians and certain others from liability to which they would be exposed were they at liberty to decline treatment of the patient. 35 P.S. § 6805; 12 P.S. § 1641 (*See* 42 Pa.C.S.A. § 8331(a)).

instant case. But that is not to say that the policy consider-ations which have emerged from those cases may not, never-theless, be helpful to us. There is, to be sure a division of opinion among the federal courts which have considered the question; some have held that public defenders do not act "under color of state law" for § 1983 purposes,[9] others have held that they do. But most of those courts have expressed some opinion, even if in dictum, concerning the issues of public policy presented by the immunity question.

In *Minns v. Paul,* 542 F.2d 899 (4th Cir. 1976), the Fourth Circuit Court sought to "identify the policy reasons which support a rule of absolute immunity. Basically there are two: (a) the need to recruit and hold able lawyers to represent indigents—both full and part-time public defend-ers, as well as private practitioners appointed by courts to represent individual defendants or litigants, and (b) the need to encourage counsel in the full exercise of professionalism, i. e., the unfettered discretion, in the light of their training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a single litigant as to how best his interests may be advanced." *Id.,* 542 F.2d at 901.

Noting that "[t]he latter consideration is particularly im-portant," the court observed that "the court-appointed attor-ney has virtually no control over which clients he will accept or reject. Moreover, since the state rather than the indigent himself is paying the attorney, the client has no economic incentive for eschewing frivolous claims." *Id.,* 542 F.2d at 901–02. *See, also, John v. Hurt,* 489 F.2d 786, 788 (7th Cir., 1973).

In *Brown v. Joseph,* 463 F.2d 1046 (3rd Cir. 1972), the Third Circuit Court opined:

"There are other consideration of public policy. First, there is the desirability of encouraging able men and women to assume Public Defender roles. To subject this

---

**9.** *See, e. g., Miller v. Barilla,* 549 F.2d 648 (9th Cir. 1977); *Espinoza v. Rogers,* 470 F.2d 1174 (10th Cir. 1972); *United States ex rel. Wood v. Blacker,* 335 F.Supp. 43 (D.N.J.1971).

defense counsel to liability, while cloaking with immunity his counterpart across the counsel table, the clerk of the court recording the minutes, the presiding judge, and counsel of a co-defendant, privately retained or court-appointed, would be to discourage recruitment of sensitive and thoughtful members of the bar.

\* \* \* \* \* \*

". . . To deny immunity to the Public Defender and expose him to this potential liability would not only discourage recruitment, but could conceivably encourage many experienced public defenders to reconsider present positions." Id. at 1049.

Additionally, considerations of judicial economy militate against the amenability of the public defender to civil liability.

The standard in Pennsylvania for assaying the effectiveness of counsel's representation of a criminally accused approximates mere negligence, i. e., "that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In no small number of cases we have determined counsel not to have met even this less than stringent test. Arguably such a determination by this court will be sufficient to get beyond the pleadings in any subsequent civil suit, "and defense of even frivolous . . . suits would consume the energy of state-subsidized attorneys which should be devoted to representing the interests of other indigent clients." *Minns v. Paul, supra*, at 902. Questions concerning the conduct of counsel during the rigors of defending a criminally accused, questions of sufficient intricacy to divide this court, will be relitigated in the civil courts. The scenario begs for inconsistent results.[10]

---

**10.** Respect for the judicial process, much less understanding of it, will be hard won by a system which permits (a) a determination that a defendant was denied his Sixth Amendment right to effective counsel, (b) warrants thereby a subsequent new trial, (c) is subsequently acquitted or has the charges against him nolle prossed, but (d) was not civilly wronged.

498

The *Brown v. Joseph* court "perceive[d] no valid reason to extend . .. . immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders." *Id.*, at 1048. "Counsel for the accused is an essential component of the administration of criminal justice. A court properly constituted to hear a criminal case must be viewed as a tri-partite entity consisting of the judge (and jury, where appropriate), counsel for the prosecution and counsel for the accused." American Bar Association Project on Standards for Criminal Justice, The Defense Function, § 1.1(a) (Approved Draft, 1971).

One court, passing upon a related question, felt that "[t]he key to the immunity . . . is that the acts, alleged to have been wrongful, were committed by the officer in the performance of an integral part of the judicial process." *Robichaud v. Ronan*, 351 F.2d 533 (9th Cir. 1965). One commentator has observed that "[j]udicial immunity has been extended to cover virtually all persons acting in judicial proceedings. . . ." Nakles, Criminal Defense Lawyer: The Case for Absolute Immunity from Civil Liability, 81 Dickinson L.Rev. 229 (1977). In addition to judges and prosecutors, clerks of court,[11] parole boards,[12] probation officers,[13] and court reporters,[14] have been cloaked with at least a qualified immunity.

I cannot say that a state-subsidized defense attorney who "enjoys continuing employment by a unit of state government, is often furnished an office as well as compensation, and appears to his client, as well as others, as a person cloaked with the authority of the state"[15] is less an integral

11. *E. g., Davis v. McAteer*, 431 F.2d 81 (8th Cir. 1970).

12. *E. g., Silver v. Dickson*, 403 F.2d 642 (9th Cir. 1968), *cert. den.* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969).

13. *E. g. Friedman v. Younger*, 282 F.Supp. 710 (C.D.Cal.1968).

14. *E. g., Brown v. Charles*, 309 F.Supp. 817 (E.D.Wis.1970).

15. *John v. Hurt*, 489 F.2d 786, 787 (7th Cir. 1973).

part of the "tri-partite entity" of our system than is a court reporter.

" '. . . Whenever, therefore, the state confers judicial powers upon individuals, it confers them with full immunity from private suits. In effect, the state says to the officer that these duties are confined to his judgment; that he is to exercise his judgment fully, freely and without favor and that he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the state and the peace and happiness of society; that, if he shall fail in the faithful discharge of them, he shall be called to account as a criminal, but that, in order that he may not be annoyed, disturbed and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages': Cooley on Torts (second edition) par. 409." Quoted in *Commonwealth v. Cauffiel*, 79 Pa.Super. 596 (1922).

Our constitutionally mandated obligation to provide legal counsel to indigents is satisfied by the establishment of public defenders' offices. Society's interest that that counsel be effective is enforceable through disciplinary proceedings established by the legal profession. The interest of the indigent defendant that his representation be effective may be vindicated through direct and collateral state and federal appellate review and the granting, where warranted, of appropriate relief. Neither the Constitution, our case law nor public policy requires more. On the contrary, in my view public policy requires the extension of judicial immunity from civil liability to public defenders.

I dissent.

With the exception of the agreement expressed about the views set forth in *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978), EAGEN, Chief Justice, joins in this opinion.