563 A.2d 958

**Stephanie MARTIN, Appellant,**

v.

**BOROUGH OF WILKINSBURG, a political subdivision, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1989.

Decided Aug. 23, 1989.

418

David E. Johnson, Joseph J. Hinchliffe, Tarasi & Johnson, P.C., Pittsburgh, for appellant.

John F. Cambest, Dattilo, Barry, Fasulo & Cambest, Pittsburgh, and Stephen A. Zappala, Jr., Pittsburgh, for appellee.

Before COLINS and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Stephanie Martin (Martin) appeals from a decision of the Court of Common Pleas of Allegheny County (trial court) denying her motion for Judgment N.O.V. We reverse in part and affirm in part.

Martin was appointed Borough Manager of the Borough of Wilkinsburg (Borough) on September 26, 1983, for a period of one year.[1] The May 18, 1984, meeting was a

1. Resolution 7684, adopted September 26, 1983, states in pertinent part:

BE IT RESOLVED by Council of the Borough of Wilkinsburg, Pennsylvania, as follows:

1. Stephanie Martin be and she is hereby appointed to the position of Wilkinsburg Borough Manager and Secretary, effective immedi-

Special Meeting, convened specifically for the purpose of dismissing Martin. To avoid dismissal, she submitted a resignation, which set forth certain conditions concerning pay and benefits.[2] Her resignation was signed by seven councilmen,[3] and was presented at the Borough Council (Council) meeting of May 18, 1984.

At that meeting Council purported to adopt the following resolutions: 1) the resignation was read and put into the minutes; 2) Fernando F. Valadez was appointed Acting Borough Manager, subject to ratification at the June 11, 1984, meeting; and 3) Martin's resignation was accepted, subject to ratification at the June 11, 1984, meeting. The ratification of these resolutions at the June 11, 1984, meeting was necessary because the May 18, 1984, meeting was a Special Meeting, and notice of the meeting had not been given in strict accordance with the Open Meeting Law.[4]

ately. She shall serve in both positions at the pleasure of Borough Council. Her appointment shall come up for review and renewal (at the pleasure of Council) in one year. Her salary as Borough Manager and Borough Secretary shall be ratified or adopted at the next meeting of Borough Council.

Martin's trial exhibit No. 4, Reproduced Record (R.R.) at 47a.

2. Martin conditioned her resignation upon Council's consent to the following conditions: 1) that her resignation was not the result of malfeasance or misfeasance; 2) that a favorable letter of recommendation be given her upon request; 3) that her resignation not be used against her in a court proceeding; 4) that her resignation did not waive her legal rights; 5) that the Borough would not contest her claim for unemployment compensation; 6) that Council would issue an opinion that its action concerning her was legal and proper; and 7) that she be paid for 252.5 hours compensatory time, accrued sick time, three personal days plus Memorial Day Holiday, making her resignation effective June 15, 1984.

Letter of Resignation, R.R. at 58a.

3. The trial court found that the practice of having the document signed in advance by the Councilmen is a local practice used by members of local government in order to avoid surprise when the matter is raised at a council meeting.

4. The Act of July 19, 1974, P.L. 486; *formerly* 65 P.S. §§ 261—269, repealed by the Sunshine Act, the Act of July 3, 1986, P.L. 388; 65 P.S. §§ 271—286. Section 266 of the Open Meeting Law, *formerly* 65 P.S. § 266, stated that:

(C) [P]ublic notice shall be given at least three (3) days prior to the time of the first regularly scheduled meeting in the case of regular

At the June 11, 1984, meeting the following resolutions were adopted by Council: the actions of Mr. Valadez as Acting Borough Manager were ratified; Andrew L. Dent (Dent) was appointed as Acting Borough Manager; and the motion to accept Martin's resignation was tabled.

At the July 9, 1984, meeting of Council, the item accepting Martin's resignation and terms and conditions set forth in her letter of resignation were tabled. No further action was taken concerning the resignation until the November 12, 1984, meeting, at which Martin appeared. She stated her belief that Council had neither accepted her resignation nor terminated her appointment, and she requested that Council either permit her to carry out her duties as Borough Manager, or accept her resignation or terminate her appointment. Because the Solicitor was not present, Council asked Martin to return at its next meeting, which she agreed to do.[5] At the December 10, 1984, meeting Council passed the following resolution:

Be it resolved by the Council of the Borough of Wilkinsburg that the employment of Stephanie Martin as Borough Manager is terminated effective May 18, 1984 and the Borough Manager is obligated to write to Mrs. Martin advising her of this action.

Subsequently, Martin filed a complaint claiming that her resignation as Borough Manager had not been accepted until December 10, 1984, and that she was entitled to receive her unpaid salary for the period from May 18, 1984, through December 10, 1984. She also claimed that she was entitled to certain benefits (consisting of compensatory time, accrued sick leave, longevity pay, automobile allowance, and vacation pay) which allegedly accrued during the entire period she was employed by the Borough (including the periods in which she served in capacities other than that of Borough Manager). She further requested additional

meetings, and at least twenty-four (24) hours prior to the time of the meeting in a case of a special or rescheduled meeting or hearings.

5. Minutes of November 12, 1984, meeting, Martin's trial exhibit 18, R.R. 74a—76a.

damages and attorney's fees. The Borough, in its answer, alleged that her resignation had been accepted on May 18, 1984, so that she was not entitled to any salary after that date, and the Borough alleged that there was no "custom and usage" to pay the aforesaid benefits.

Martin requested, through discovery, the pay records for other terminated employees, which the Borough claimed were not available.

Following a non-jury trial, the trial court entered verdict for the Borough. The trial court held that: 1) Martin's resignation was accepted on May 18, 1984; 2) on the same date Council appointed an Acting Borough Manager, 3) those actions were ratified at the June 11, 1984 meeting, and 4) Council appointed a Second Acting Manager, who eventually became the Borough Manager. Martin filed a motion for Judgment N.O.V. which the trial court denied. Martin appeals from that denial.

In essence, Martin contends that the trial court committed two errors. Martin contends that the trial court erred in determining that Council, by its June 11, 1984, vote, ratified its May 18, 1984, acceptance of her resignation. Martin contends that the trial court erred in denying her claim for fringe benefits. With regard to this latter issue, Martin suggests that the trial court erred in finding that there was no custom and policy of the Borough to grant fringe benefits to administrative personnel, and that the trial court erred in not holding that Council was estopped from denying her the fringe benefits.

There is no question that Council had the power to remove Martin. Article VI, Section 7 of the Pennsylvania provides: "Appointed civil officers, other than judges of the court of record, may be removed at the pleasure of the power by which they shall have been appointed...." Accordingly, Section 1141 of The Borough Code (Code),[6] which authorizes a Borough to establish, fill, and vacate the position of Borough Manager, states:

6. Act of February 1, 1966, P.L. (1965) 1656, *as amended;* 53 P.S. § 46141.

The council of any borough may, at its discretion, at any time, create by ordinance the office of borough manager and may in like manner abolish the same. While said office exists, the council shall, from time to time, and whenever there is a vacancy, elect, by a vote of a majority of all the members, one person to fill said office, *subject to removal by the council at any time by a vote of the majority of all the members.*

(Emphasis added.)

Council thus having the power to remove Martin, the question before us is whether or not Council exercised this power to remove Martin, and, if so, when. The trial court held that Council removed Martin by voting on May 18, 1984, to accept her resignation and by voting to ratify that vote on June 11, 1984. The trial court stated in this regard that:

It is clear that her resignation was accepted on May 18, 1984. The position she held was simultaneously filled by an acting borough manager. At the next meeting held on June 11, 1984, that action was ratified by a roll call vote, and the same position again filled by a second acting manager, a Mr. Dent, who eventually became the Borough Manager and continued to serve in that capacity until the time of this trial.

Trial court's opinion at 4.

■ Martin's letter of resignation was an offer to resign, conditioned upon the Borough's acceptance of her conditions. Due to the lack of notice of the May 18, 1984, meeting, Council's purported acceptance of Martin's resignation on that date was invalid and had no effect. Consequently, we must look to subsequent votes of Council to determine whether or not Council accepted Martin's offer to resign.

■ Our review of the record indicates that there is no substantial evidence to support the trial court's finding that Council's vote on June 11, 1984, constituted a ratification of its May 18, 1984, vote to accept Martin's resignation. The

minutes from the June 11, 1984, meeting state that: "Mr. Berkhardt suggested that the actions of the present Acting Borough Manager from the time of Stephanie Martin's resignation until today be ratified, [sic] it was so passed unanimously with one exception." [7] It is clear that Council, knowing that its appointment of the Acting Borough Manager on May 18, 1984, had no legal effect, was ratifying his actions from May 18, 1984, through June 11, 1984, so as to give them legal effect. This vote did not constitute a ratification of its "acceptance" of Martin's offer to resign. To the contrary, Council signified its intention *not* to accept Martin's resignation; Council tabled all discussions concerning Martin's resignation at its June and July meetings.

Council did not vote to remove Martin from office until December 10, 1984. Although Council purported to remove Martin *as of* May 18, 1984, we know of no authority, nor has the Borough submitted any authority, which gives the December 10, 1984, vote retroactive effect. Thus, Council's vote would have sufficed to remove her from office effective December 10, 1984, had not her one-year appointment already expired on September 25, 1984. Martin's last day as *de jure* Borough Manager was September 25, 1984.

The trial court found that Martin's last day of work was May 18, 1984.[8] Martin claims that she is entitled to her salary from May 18, 1984, until the time of her removal, despite the fact that she did not perform the duties of Borough Manager subsequent to May 18, 1984. In support of this assertion, she claims that she was ready and willing to work, but was prevented from fulfilling her duties.[9] More importantly, she asserts that she is entitled to the

7. Martin's trial exhibit 13, R.R. at 65a.

8. Trial court's opinion at 7.

9. Martin appeared before Council on November 12, 1984, and requested that she be allowed to work, that her resignation be accepted or that she be terminated formally.

salary as an emolument of office. We find the latter theory to be dispositive.

Our Supreme Court stated in *Naef v. Allentown*, 424 Pa. 597, 601, 227 A.2d 888, 891 (1967):

> An appointment to a public office for a fixed term and salary is not a contract within the protection of the Constitution. The compensation is incidental to the office and is governed by the right thereto. The emoluments are annexed to the office and not to the person; hence the salary belongs to the officer, de jure. If the officer is properly dismissed, the salary ceases.

Our Supreme Court has defined a public office, thusly:

> To constitute a public office, it is essential that certain independent public duties, a part of the sovereignty of the State, should be appointed to it by law, to be exercised by the incumbent in virtue of his election or appointment to the office thus created and defined ...;

*Reese v. Danforth*, 486 Pa. 479, 483, 406 A.2d 735, 737 (1979) (quoting *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 358, 22 A.2d 686, 688 (1941)). The Court further stated that:

> [T]he question of whether an individual is a public officer ... must be determined by a consideration of the nature of the service to be performed by the incumbent, and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one [citation omitted]. Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a fixed period, acts under oath, gives a bond, and the source or character of the compensation received.

*Reese*, 486 Pa. at 483–84, 406 A.2d at 738 (1979) (quoting *Finley v. McNair*, 317 Pa. 278, 281, 176 A. 10, 11 (1935)). With these considerations in mind, it is indisputable that a

Borough Manager is a public official. Consequently, as a public officer, Martin is entitled to her salary as an emolument of office from May 18, 1984, until the expiration of her term of office on September 25, 1984.

We do, however, reject Martin's second main contention, *i.e.*, that the trial court erred in denying her claim for fringe benefits. The trial court, as finder of fact, determined that Martin failed to set forth any documentation that she was entitled to such benefits. The trial court made a credibility determination and rejected the evidence which Martin offered in support of her claim that the Borough customarily pays such benefits to terminated management personnel. This finding is supported by substantial evidence. Consequently, because the trial court made a factual determination that the Borough does not provide these fringe benefits to terminated management personnel, Martin cannot prevail on a theory of estoppel (*i.e.*, the Borough may not be estopped from refusing to provide benefits which the trial court found the Borough does not provide).

Accordingly, the decision of the trial court is reversed insofar as the trial court denied Martin's claim for salary, and we direct that the Borough pay Martin her salary from May 18, 1984, through September 25, 1984. We affirm the decision of the trial court denying Martin's claim for fringe benefits.

## ORDER

AND NOW, this 23rd day of August, 1989, the decision of the trial court is reversed insofar as the trial court denied Martin's claim for salary, and we direct that the Borough pay Martin her salary from May 18, 1984, through September 25, 1984. We affirm the decision of the trial court denying Martin's claim for fringe benefits.

BARRY, J., did not participate in the decision in this case.