COMMONWEALTH of Pennsylvania, Appellant

v.

**Jeffrey David NORRIS.**

Superior Court of Pennsylvania.

Argued Feb. 15, 2011.

Filed Aug. 22, 2011.

---

William R. Stoycos, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

Paul P. Ackourey, Scranton, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA and FITZGERALD,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

The Commonwealth appeals the order of the trial court holding that three violations of the Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act"),[1] charged against appellee, are barred by the statute of limitations.[2]

---

\* Retired Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 5701 *et seq.*

2. The Commonwealth may appeal an interlocutory order as of right where it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. *See Commonwealth v. Brister,* 16 A.3d 530, 533–534 (Pa.Super.2011); Pa.R.A.P. 311(d). The Commonwealth has included this certification in the present notice of appeal.

Finding this holding to be in error, we reverse.

Appellee, Jeffrey David Norris ("Norris"), was a public schoolteacher for the Montrose Area School District during the relevant times in question. According to the Commonwealth, Norris engaged in an illegal sexual relationship with one of his 14–year–old female students from March through June of 2007. Norris and the student engaged in sex on three occasions during this period, and Norris also allegedly supplied marijuana and cocaine to the girl. During the police investigation of Norris, a search warrant of his residence was conducted on February 9, 2009. The search uncovered three audiotapes containing conversations between Norris and various school officials recorded on December 31, 2004, July 11, 2006, and May 5, 2007, respectively. The tapes were recorded without the knowledge or consent of the school officials in violation of the Wiretap Act.

On June 16, 2009, Norris was arrested and charged with three counts each of statutory sexual assault, indecent assault, corruption of minors, and interception, disclosure, or use of wire, electronic, or oral communications.[3] On November 5, 2009, Norris filed a supplemental omnibus pretrial motion in which he asserted, in part, that the charged violations of the Wiretap Act were barred by the applicable two-year statute of limitations, 42 Pa.C.S.A. § 5552(a). The Commonwealth responded that, as a public schoolteacher, Norris fell under an exception to the statute of limitations that applied an extended period of limitations to public officials or employees

3. 18 Pa.C.S.A. §§ 3122.1, 3126(a)(8), 6301(a)(1), and 5703(1), respectively.

4. Sections 5551 and 5552(b) and (b.1) provide for no statute of limitations or longer limitations periods on certain specified offenses.

who violated the law in the course of their employment, 42 Pa.C.S.A. § 5552(c)(2).

The statute at issue reads as follows:

5552. Other offenses[4]

(a) General rule.—Except as otherwise provided in this subchapter, a prosecution for an offense must be commenced within two years after it is committed.

(c) Exceptions.—If the period prescribed in subsection (a), (b) or (b.1) has expired, a prosecution may nevertheless be commenced for:

(2) Any offense committed by a public officer or employee in the course of or in connection with his office or employment at any time when the defendant is in public office or employment or within five years thereafter, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than eight years.

42 Pa.C.S.A. § 5552 (in pertinent part) (underlining emphasis added).

On February 17, 2010, the trial court filed its order and opinion (dated February 12, 2010). The trial court ruled that Norris, as a public schoolteacher, was not a public employee for the purposes of the exception to the statute of limitations extending the limitations period. The rationale of the trial court was as follows:

This Court has examined other cases in which the statute of limitations was extended through this exception. Those cases all pertained to a Defendant who was an elected or politically appointed official. It seems that there must be more than where his or her paycheck

Norris's charged violations under the Wiretap Act are not specified offenses and, thus, would otherwise fall under the two-year statute of limitations. See 42 Pa.C.S.A. §§ 5551, 5552(b) and (b.1).

comes from. Surely the janitor in a State building is not subject to a longer Statute of Limitations, solely because of the source of his salary. Rather, it appears that there should be some type of position of power, where he or she has authority over public procedures, spending or policy. It is the abuse of office that creates the exception to the Statute of Limitations.

The fact that the defendant was paid with public tax revenue and was employed by a public school district does not render him a public employee or official for the purposes of tolling the statute of limitations as per 42 Pa.C.S.A. § 5552(c)(2).

Opinion and order, 2/17/10 at 3–4.

On March 12, 2010, the Commonwealth filed this timely appeal. Therein, the Commonwealth raised a single issue, contending that the trial court erred in excluding a public schoolteacher from the definition of "public employee" under 42 Pa.C.S.A. § 5552(c)(2).

We begin by reiterating our standard of review which, in matters of statutory construction, is de novo, and our scope of review, plenary. *Commonwealth v. B.D.G.*, 959 A.2d 362, 376 (Pa.Super.2008). Following these guidelines, we find that the trial court erred in excluding public schoolteachers from the definition of public employee under 42 Pa.C.S.A. § 5552(c)(2).

In determining whether the term public employee, as used in this statute, includes public schoolteachers, we observe that reliance on case precedent is unavailing. Neither the Commonwealth nor Norris has provided any determinative case authority as to whether the meaning of public employee under this statute includes public schoolteachers.[5] The trial court cites to *Commonwealth v. Miller*, 94 Pa.Super. 499, 1928 WL 4565 (Pa.Super.1928), and *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979) in support.

*Miller* is an 83–year–old decision that, upon our reading, bears little relevance to the instant situation. *Miller* involved a Pennsylvania State Trooper who improperly withdrew charges against an individual accused of driving under the influence of alcohol, and then released the violator. The court examined the question as to whether the trooper could be considered a public officer liable to prosecution and conviction for the crime of malfeasance in office, or whether the trooper was a mere employee. Ultimately, the court found that because the trooper was invested with some of the powers and functions of the government, and was not merely clerical or an agent or a servant, the trooper did qualify as a public officer. Aside from the fact that it is not interpreting the present statute, *Miller* is inapposite because it involved the interpretation of who qualifies as a public officer or official as opposed to a mere employee. The instant statute, however, by its plain wording, is not aimed at just public officials, as the trial court suggests, but also at public employees. Thus, *Miller* fails to address our situation.

*Reese* is similarly inapposite. There, our supreme court determined whether public defenders were public officials so as to be immune from law suit for negligent

---

5. We have likewise been unable to find any case precedent. During the hearing on this matter below, the Commonwealth contended that no precedent exists because the term "public employee" plainly includes a public schoolteacher. The Commonwealth drew the analogy that there are no cases declaring that water is wet, because that fact is obvious to all. (Notes of testimony, 11/24/09 at 27–28.) We agree. As our subsequent analysis will show, we find that a public schoolteacher is clearly a public employee within the common usage of the term.

misrepresentation. The court held that public defenders were not public officials because they do not serve as public administrators with policy-making functions, nor do their powers include any governmental functions. Again, *Reese* was not examining the present statute, but an immunity doctrine that applies only to public officials. The focus of the inquiry, as in *Miller*, is what defines a public official as opposed to a mere employee. However, unlike the immunity doctrine, the present statute applies to both public officials and public employees. It is wholly irrelevant to the statute at issue that a public employee may not qualify as a public official. Both are subject to the extended statute of limitations.

Finally, the trial court observes, without recitation to authority, that it has examined other cases in which the statute of limitations was extended by this statute, and that all involved a defendant who was an elected or politically appointed official. This does not support a conclusion that the statute at issue applies only to public officials; rather, it only indicates that so far, only public officials have been prosecuted under the extended statute of limitations. This is unsurprising. Although in the ensuing analysis we find that power and authority are not a necessary aspect of employment to qualify for application of the extended statute of limitations, clearly employment that comes with power and authority will give far greater opportunities for abuse of the position.

Since an analysis of case law provides no insight into whether a public schoolteacher is included in the definition of "public employee" as that term is used in section 5552(c)(2), we must, therefore, turn to our rules of statutory construction.

■ Although the Wiretap Act itself does not define public employee, the definitional section of Title 18, pertaining to Crimes and Offenses, and under which the Wiretap Act falls, does define public servant:

> **"Public servant."** Any officer or employee of government, including members of the General Assembly and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function; but the term does not include witnesses.

18 Pa.C.S.A. § 4501 (in pertinent part).

Clearly, a public servant is any person who works for, and is paid by, any governmental unit, including the state, the counties, cities, townships, and boroughs, as well as school districts and municipal authorities. Under this definition, public schoolteachers are certainly public servants because they work for, and are paid by, a government unit (the school district) to perform a governmental function (education). We find that "public servant" is synonymous with "public employee." A public employee is simply any person who works for, and is paid by, a governmental unit. We perceive no ambiguity whatsoever in that meaning. Public schoolteachers are public employees. The question thus remains that even if public schoolteachers are public employees within the meaning of Section 5552(c)(2), did the Legislature intend to limit the ambit of "public employee" as the trial court ruled, to public employees holding positions of power or authority. Nowhere in the plain words of the statute can we discern such an intent.

■ Our rules of statutory construction require that we construe words and phrases according to their common usage. 1 Pa.C.S.A. § 1903. Further, where the words are clear and free from ambiguity, we are charged with pursuing the letter of the law and not to disregard it under the pretext of pursuing the spirit of the law. This is precisely where the trial court

erred. In a statute that simply extends the statute of limitations for all public employees, the trial court analyzed what the spirit of the law is in order to construe the meaning of "public employee," a term we have found has a plain and obvious meaning, and is clear and free of any ambiguity. Thereafter, the trial court found that in extending the statute of limitations for public employees, the Legislature actually intended to limit the extension to public employees who wield some power or authority. In doing so, not only has the court improperly analyzed the spirit of the law where the words are clear and free of ambiguity, it has also effectively written "public employee" out of the statute, and enforced the statute only as to "public officials." Thus, the trial court also violates the rule of statutory construction that directs that we give effect to *all* of the provisions of a statute. *See* 1 Pa. C.S.A. § 1921(a).

■ The trial court was correct in one regard. "It is the abuse of office [or employment] that creates the exception to the Statute of Limitations." (Opinion and order, 2/17/10 at 4.) The trial court apparently believed that only an employee in a position of power or authority could abuse his or her public employment, and discounted the possibility that a mere janitor could similarly abuse his or her employment. Certainly, a public employee in a position of power or authority has more opportunity to abuse his or her employment. Yet, we can easily imagine a scenario where even a janitor might abuse his position. For instance, a publicly employed janitor may have access to the private offices of powerful public officials. Suppose the janitor were to steal bid information on a public project and then were to sell the information to a construction company? The janitor would have abused his public employment for personal gain and would be subjected to an extended statute of limitations. Likewise, a public schoolteacher who breaks the Wiretap Act at his school should also face the extended statute of limitations.[6]

For his part, aside from a bald assertion that the term "public employee" is vague and ambiguous, which we wholly reject, Norris argues that the definition of public employee contained in the Public Official and Employee Ethics Act ("the Ethics

---

**6.** There is no question that the alleged violations were related to Norris' employment as a public schoolteacher. The three recorded conversations were accurately summarized in appellant's brief:

(1) on December 31, 2004, Norris intentionally intercepted oral communications in violation of the Wiretap Act by secretly tape recording the private conversations of Michael Ognosky ("Ognosky") (Superintendent of the School District), Ron Collins (School District teacher and basketball coach), and Norris during a meeting held in Ognosky's office to discuss the necessity of Norris' resignation as a basketball coach due to events that transpired during a basketball practice session. (89a–92a);

(2) on July 11, 2006, Norris intentionally intercepted oral communications in violation of the Wiretap Act by secretly tape recording the private conversations of Ognosky and Norris during a meeting held in Ognosky's office to discuss the School District's granting of tenure to Norris. (82a–85a); and

(3) on May 3, 2007, Norris intentionally intercepted oral communications in violation of the Wiretap Act by secretly tape recording the private conversations of James Tallarico ("Tallarico") (Principal of the School District's high school), Russell Canevari (Assistant Principal of the School District's high school) and Norris during a meeting held in Tallarico's office to discuss rumors and allegations traveling through the high school that Norris was involved in an inappropriate relationship with a 14–year–old student named [A.R.] (R 119a–123a, 132a–134a).

Appellant's brief at 8.

Act"), 65 Pa.C.S.A. § 1101 *et seq.*, should control:

### § 1102. Definitions

The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

"Public employee." Any individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a nonministerial nature with regard to:

(1) contracting or procurement;

(2) administering or monitoring grants or subsidies;

(3) planning or zoning;

(4) inspecting, licensing, regulating or auditing any person; or

(5) any other activity where the official action has an economic impact of greater than a de minimis nature on the interests of any person.

The term shall not include individuals who are employed by this Commonwealth or any political subdivision thereof in teaching as distinguished from administrative duties.

65 Pa.C.S.A. § 1102 (in pertinent part) (underlining emphasis added).

As seen, the Ethics Act specifically excludes public schoolteachers from the definition of public employee. Norris contends that this section applies to the statute at issue because of the action of 65 Pa.C.S.A. § 1112:

### § 1112. Conflict of law

Except as otherwise provided in Chapter 13 (relating to lobby regulation and disclosure), if the provisions of this chapter conflict with any other statute, ordinance, regulation or rule, the provisions of this chapter shall control.

65 Pa.C.S.A. § 1112.

Norris asserts that pursuant to Section 1112 of the Ethics Act, any definition of public employee used for the statute of limitations extension provision must conform to that used by the Ethics Act. We disagree.

First, we note that the introduction to the definition section of the Ethics Act specifically limits those definitions to their use in the Ethics Act alone: "[t]he following words and phrases *when used in this chapter* shall have, unless the context clearly indicates otherwise, the meanings given to them in this section." Thus, the Ethics Act does not contemplate that its definitions will be exported to other statutes through Section 1112.

Second, the definition of public employee under the Ethics Act, which specifically excludes teachers, does not necessarily conflict with other statutory definitions of public employee that include public schoolteachers. This is because of the purpose underlying the Ethics Act:

### § 1101.1. Purpose

(a) **Declarations.**—The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impar-

tiality and honesty of public officials, this chapter shall be liberally construed to promote complete financial disclosure as specified in this chapter. Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this chapter intends to define as clearly as possible those areas which represent conflict with the public trust.

65 Pa.C.S.A. § 1101.1(a).

■■■ The distinct purpose of the Ethics Act was to regulate public office holders and those seeking public office, and prohibit them from using that office to benefit financially at the expense of the public. Thus, the definition of public employee as used in the Ethics Act was specifically crafted to exclude from the definition of public employee anyone other than someone who essentially acts in the capacity of a public office holder. Unlike the Ethics Act, the statute extending the statute of limitations for public officials and public employees does not purport to apply to public office holders (or those acting in that capacity) alone, but to all public officials and all public employees. Thus, the specialized definition of public employee used in the Ethics Act does not address or affect the broader reach of the statute at issue, and therefore, does not conflict with a definition of public employee that does address the broader reach. In sum, we find that the limited definition of public employee contained in the Ethics Act was intended to apply to the Ethics Act only and was not intended to alter the definitions of other statutes.

Nonetheless, our examination of the Ethics Act is not entirely unfruitful. We find that Section 1102 of the Ethics Act does shed light on whether public employee, as used in the statute under review, includes public schoolteachers. At point, that the Legislature chose to specifically exclude public schoolteachers from the meaning of "public employee" shows that the Legislature was of the opinion that public schoolteachers would otherwise ordinarily be included in the meaning of "public employee."

To summarize, our review of 42 Pa. C.S.A. § 5552(c)(2), leads us to conclude that in its plain meaning, "public employee" is any person who works for, and is paid by, a governmental unit. This is the meaning we must attach to the use in Section 5552(c)(2). A public schoolteacher works for, and is paid by, a local school district, which is a governmental body. Therefore, a public schoolteacher is a public employee within the meaning of Section 5552(c)(2). There is no vagueness or ambiguity in this regard. Furthermore, there is no indication that the Legislature intended to limit Section 5552(c)(2) to only those public employees who hold positions of power or authority. Therefore, we find that the statute applies to extend the statute of limitations for all public employees, including public schoolteachers.

Accordingly, the order of the trial court will be reversed and this matter will be remanded for trial on all charges, including those pertaining to the Wiretap Act.

Order reversed. Case remanded. Jurisdiction relinquished.