J-S27018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DENNIS HORTON, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES S. BRUNO | : | No. 2176 EDA 2016 |

Appeal from the Order June 9, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  130202725

BEFORE:   GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                              **FILED July 3, 2017**

Dennis Horton appeals, *pro se*, from the order entered June 9, 2016, in the Philadelphia County Court of Common Pleas, granting the motion for summary judgment filed by defendant, James S. Bruno, in this legal malpractice action.[1]   Horton is currently serving a prison term of life

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note Horton's notice of appeal filed on July 12, 2016, was premature because, at that time, his motion for summary judgment, filed in May of 2016, was still outstanding.  **See** Pa.R.A.P. 341(b)(1) (a final order is one that, *inter alia*, "disposes of all claims and of all parties").  However, on September 13, 2016, the trial court entered an order denying Horton's motion.  Accordingly, Horton's appeal is properly before us.  **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

imprisonment for a 1994 conviction of second-degree murder[2] and related charges. Bruno served as Horton's Post Conviction Relief Act ("PCRA")[3] counsel from 2009 to 2011. Thereafter, Horton reported Bruno to the Pennsylvania Disciplinary Board, and based upon his representation of Horton and several other clients, Bruno was subsequently suspended from the practice of law for two years. While the disciplinary proceedings were pending, Horton filed this civil complaint asserting legal malpractice. On appeal, Horton contends the trial court erred or abused its discretion by: (1) denying his pretrial motion to amend his complaint; (2) denying his motion to compel Bruno to produce certain documents; and (3) granting Bruno's motion for summary judgment. For the reasons below, we affirm.

The facts and procedural history underlying this appeal are aptly summarized by the trial court as follows:

> On September 30, 1994, a jury convicted [Horton] of murder in the second degree, three counts of aggravated assault, four counts of robbery, and one count each of criminal conspiracy and possessing an instrument of crime. [***See*** ***Commonwealth v. Horton***, 48 A.3d 479 (Pa. Super. 2012) (unpublished memorandum)]. [Horton] was sentenced to an aggregate term of life imprisonment for the murder plus eighteen and a half to sixty-one years' imprisonment for the remaining offenses. On March 20, 1996, the Superior Court affirmed the judgment of sentence. ***Commonwealth v. Horton***, 678 A.2d 828 (Pa. Super. 1996) (unpublished mem[orandum]).

_____

[2] ***See*** 18 Pa.C.S. § 2502.

[3] 42 Pa.C.S. §§ 9541-9546.

- 2 -

On October 11, 1996, [Horton] retained private counsel and filed his first Post Conviction Relief Act ("PCRA") petition.[1] The trial court dismissed [Horton's] PCRA petition, and the Superior Court affirmed. *See Commonwealth v. Horton*, 736 A.2d 9 (Pa. Super. 1998) (unpublished mem[orandum]), *appeal denied*, 738 A.2d 455 (Pa. 1999).

---

[1] The pleadings and the Superior Court opinion, *Horton*, 48 A.3d 479, maintain that [Horton's] first PCRA petition did not raise his original trial counsel's ineffective assistance in failing to subpoena medical records. The Superior Court added: "[Horton] could have filed a PCRA petition long before now, claiming trial counsel's ineffectiveness in not seeking to subpoena the medical records, and the records could have been subpoenaed at that time." *Horton*, 48 A.3d 479.

---

On January 30, 2006, around ten years after the judgments of sentence became final,[2] [Horton] filed his second PCRA petition, raising an after-discovered facts time bar exception. On March 20, 2007, the trial court issued notice under Pa.R.Crim.P. 907 of its intention to dismiss the petition as untimely. On March 11, 2009, [Bruno] was appointed to represent [Horton]. On December 8, 2009, [Bruno] filed an amended PCRA petition on behalf of [Horton], raising additional claims to the time bar exception. On May 4, 2010, the trial court issued a Rule 907 notice of its intention to dismiss the amended petition as without merit. On June 1, 2010, [Horton] filed a response, alleging that [Bruno] rendered ineffective assistance in his amended petition. The trial court dismissed the petition on September 16, 2010. On October 18, 2010, [Horton] appealed, contending that, among other things, his "after-discovered" medical records of his knee injury, which occurred about a month before the crime, entitled him to a time bar exception. On April 25, 2011, [Horton] filed a *pro se* motion seeking the removal of [Bruno] and a *Grazier* hearing. [*See*] *Commonwealth v. Grazier*, 713 A.2d 81 (1998). Following the *Grazier* hearing, the trial court granted [Horton's] request and permitted [Bruno] to withdraw. On April 17, 2012, the Superior Court affirmed the trial court's dismissal of the second PCRA petition, reasoning that the petition was untimely, no valid exception to the time bar existed, and the remaining issues were meritless. *Horton*, 48 A.3d 479, *appeal denied*, 60 A.3d 535

(Pa. 2012). In or around April 2012, [Horton] made a complaint to the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board") regarding [Bruno].[3]

_____

[2] [Horton's] judgment of sentence became final on April 19, 1996 pursuant to 42 Pa.C.S. § 9545(b)(3) and Pa.R.A.P. 1113. **Horton**, 48 A.3d 479.

[3] In May 2013, the Office of Disciplinary Counsel ("ODC") charged [Bruno] with violations of the Rules of Professional Conduct, arising out of eleven separate claims against him. **See** Disciplinary Board File No. 180 DB 2011 (Pa. 2014). On July 18, 2014, the Disciplinary Board recommended the suspension of [Bruno's] license to practice law for one year and one day, with probation of three years, subject to conditions. On November 13, 2014, upon consideration of the Report and Recommendation of the Disciplinary Board, the Supreme Court suspended [Bruno] from the practice of law for a period of two years retroactive to February 26, 2013, followed by a two–year probation [term] after reinstatement, subject to conditions. **See** Supreme Court Order dated November 13, 2014.

_____

On February 26, 2013, [Horton] filed the instant action against [Bruno] in assumpsit (Count I) and in trespass (Count II), alleging that [Bruno's] ineffective assistance in his criminal matter constituted breach of contract and negligence.[4] Most significantly, the complaint averred that [Bruno] failed to obtain and attach affidavits of his treating medical providers and failed to subpoena medical records[5] to his amended PCRA petition, which, according to [Horton], prevented him from proving his innocence. After the case was transferred from arbitration to trial, [Bruno] filed an answer with new matter on July 14, 2014, noting that (1) [Horton] never entered into a contractual relationship with [Bruno], and the law does not recognize a contractual relationship between court-appointed counsel and defendant; (2) that [Horton] raised the issue of getting medical treatment for his knee injury at trial; (3) that [Horton], in his first PCRA petition, did not raise the issue of his original trial counsel's failure to secure his treating medical providers or medical records; and (4) that [Horton] cannot show that but for [Bruno's] negligence (i.e. producing an allegedly defective petition), [Horton] would have prevailed because one month

- 4 -

prior to the crime, [Horton's] medical records indicate that he was walking with a normal gait. On August 6, 2014, [Horton] filed his reply, stating that (1) a contractual obligation was formed once [Bruno] accepted the appointment and entered his appearance; (2) that the knee injury defense was unavailable at trial because the hospital could not locate his file; (3) that it would have been inappropriate and frivolous to allege that his original trial counsel was ineffective for failing to secure his medical records; (4) that [Horton] could have prevailed in his second PCRA petition if [Bruno] followed a "multi-tier process," which we summarize here as good lawyering practices; and (5) that the outcome of the trial would have been different if his complete medical records along with testimony of his treating medical providers and his employer[6] were included in his second PCRA petition. In [Horton's] new matter, he raised for the first time the enforcement of default judgment against [Bruno]. On August 25, 2014, [Bruno] replied, claiming noncompliance with the rules.

_____

[4] On March, 25, 2013, [Horton] initiated his third PCRA petition, requesting discovery and DNA testing. On June 3, 2015, the trial court issued a Rule 907 notice of its intention to dismiss the amended petition as untimely.

[5] Alternatively, [Bruno] failed to attach the copies of [Horton's] medical records obtained by [Horton] at the prison medical department.

[6] [Horton] also avers that [Bruno] failed to include the testimony of his former supervisor Norman Whitest, who witnessed [Horton's] knee injury at work that occurred on or about April 26, 1993. The Superior Court noted that [Horton] could have raised the knee injury defense at trial without the medical records, presenting Norman Whitest as a witness to suggest that [Horton] could not have committed the crime. *Horton*, 48 A.3d 479, n.4.

_____

On January 13, 2016, [Horton] filed a motion to compel production of documents,[7] wherein he sought to discover [Bruno's] documents exchanged with the Disciplinary Board and with Attorney Sondra Rodrigues, who was counsel for a co-defendant in the criminal matter; and [Bruno's] counseling and treatment records. [Bruno] answered, arguing, *inter alia*, that

the requested items were irrelevant. [Horton] argued that the items were relevant and pointed out that [Bruno] waived his objections since his answer was untimely and failed to provide any reason for the delay. This court denied the motion on May 24, 2016.

_____

[7] The request for production of documents was served around June 30, 2015. [Horton] followed up with a letter requesting compliance around October 10, 2015.

_____

On April 5, 2016, [Bruno] moved for summary judgment after discovery was completed and pleadings closed. Specifically, [Bruno] argued that summary judgment was appropriate because (1) there was no contractual relationship between [Horton] and [Bruno], and (2) since the second PCRA petition was held to be untimely by both the trial court and the Superior Court, [Horton] could not have committed malpractice for failing to include the medical evidence. On April 29, 2016, [Horton] filed an answer in opposition to the motion for summary judgment denying [Bruno's] averments because a contractual relationship allegedly existed and the Superior Court's holding on his second PCRA petition would have been different but for [Bruno's] negligence. On May 18, 2016, [Horton] moved for summary judgment, arguing that no genuine issues of materials facts exist in his two claims. This court granted summary judgment in favor of [Bruno] on June 10, 2016. [Horton] thereafter filed his notice of appeal on July 12, 2016 and timely issued his Pa.R.A.P. 1925(b) statement of errors complained of on appeal on August 25, 2016. [Horton's] motion for summary judgment was denied on September 13, 2016.

Trial Court Opinion, 9/16/2016, at 1-6 (most citations omitted).

In his first issue on appeal, Horton argues the trial court erred or abused its discretion in denying his motion to amend his complaint "to introduce new matters and evidence in support [] thereof, which was unavailable at the time the Complaint was filed[,]" namely, the disciplinary proceedings against Bruno. Horton's Brief at 8. He asserts that while leave

to amend lies within the discretion of the trial court, it should be liberally granted. **See id.** Moreover, Horton contends that to the extent his motion was defective in that he did not seek court approval to amend, the trial court should have permitted him the opportunity to correct any defect before denying the motion. **See id.** at 10. Furthermore, he maintains any delay in filing the motion was attributable to Bruno, since he "never divulged the existence of the information in those documents in response to the complaint[.]" **Id.**

Pennsylvania Rule of Civil Procedure 1033 provides, in relevant part, a party may amend a pleading at any time, "either by filed consent of the adverse party or by leave of court[.]" Pa.R.C.P. 1033(a).

> Our standard of review of a trial court's order denying a plaintiff leave to amend its complaint, … permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion. The trial court enjoys "broad discretion" to grant or deny a petition to amend. … Although the trial court generally should exercise its discretion to permit amendment, … where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied.

**The Brickman Grp., Ltd. v. CGU Ins. Co.**, 865 A.2d 918, 926–927 (Pa. Super. 2004) (internal citations omitted). "An abuse of discretion occurs when a trial court ... overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." **Keller v. Mey**, 67 A.3d 1, 7 (Pa. Super. 2013).

Our review reveals no abuse of discretion on the part of the trial court. First, we note Horton did not seek either Bruno's consent, or the court's

permission, to amend his complaint. Rather, on April 29, 2016, more than three years after he initiated the lawsuit, Horton filed a document titled, "Motion Introducing Third, Fourth and Fifth New Matters." *See* Motion Introducing Third, Fourth and Fifth New Matters, 4/29/2016. The "new matters" he sought to introduce were documents from Bruno's disciplinary proceedings, and, in particular Bruno's stipulation to the facts underlying the disciplinary complaint. *See id.* at 1. Horton asserted these stipulations "prove[d] conclusively" the allegations in the legal malpractice complaint, and entitled him to a judgment "in the sum of [$]75,000.00." *Id.* at 3, 9. *See also id.*, Exhibit A, Supplemental Joint Stipulation of Facts in Bruno's disciplinary proceedings, 3/20/2013, at ¶¶ 7-93.

Rule 1033 explicitly requires either "filed consent of the adverse party" or "leave of court" before a party may amend his complaint. Pa.R.C.P. 1033(a). Because Horton obtained neither, the trial court acted well within its discretion in denying his belated amendment. Nevertheless, even if we presume the trial court should have considered Horton's *pro se* filing as a petition seeking permission to amend, we still would conclude he is entitled to no relief. As will be discussed *infra*, Bruno's stipulations in the disciplinary proceedings do not prove Horton's legal malpractice claim. Therefore, because the proposed amendments do not "state a claim on which relief could be granted," the trial court did not abuse its discretion in denying

Horton permission to amend the pleadings.[4]  ***The Brickman Grp., Ltd.***, ***supra***, 865 A.2d at 927.  Accordingly, Horton's first claim fails.

Second, Horton argues the trial court erred or abused its discretion in denying his motion to compel the production of documents.  ***See*** Horton's Brief at 12.  By way of background, in June of 2015, Horton served Bruno with a request for the production of documents including any and all affidavits, documents, statements, and correspondence related to Bruno's disciplinary proceedings and mental health treatment, and any correspondence between Bruno and Horton's co-defendant's counsel, Sondra Rodriques, Esq., related to Horton's appeal or Bruno's disciplinary proceeding.  ***See*** Motion to Compel Production of Documents, 1/13/2016, Exhibit A, Request for Production of Documents, dated 6/30/2015, at unnumbered 2-5.  When Bruno failed to respond to the discovery request, Horton sent another letter in October of 2015 requesting Bruno's compliance.  After Bruno continued to ignore the request, Horton filed a motion to compel on January 13, 2016.  Bruno filed a response on April 6,

_____

[4] We note the judge who considered the proposed amendment was not the same judge who ruled upon the motion to compel and summary judgment motion.  ***See*** Order, 5/26/2016.  Therefore, the trial court, in its opinion, presumed the amendment was not permitted because it was "improper under Pa.R.C.P. 1033 and untimely."  Trial Court Opinion, 9/16/2016, at 17.  Nevertheless, we may affirm the decision of the trial court on any basis.  ***See Richmond v. McHale***, 35 A.3d 779, 786 n.2 (Pa. Super. 2012).

2016, and the trial court subsequently denied the motion by order dated May 24, 2016.

Horton contends the court's denial of his motion to compel was an abuse of discretion or error of law. First, Horton asserts Bruno waived any objection to the motion to compel because he did not file a response until "130 days elapsed." Horton's Brief at 14, *citing* Pa.R.C.P. 4006(a)(2).[5] Second, he maintains the information he requested regarding Bruno's disciplinary proceedings was relevant because the specific details underlying the suspension "are closely related to the issues raised in [the] complaint and provide irrefutable proof of the material facts in this case." *Id.* at 16. Third, Horton insists his requests were not overbroad, and the documents he sought regarding Bruno's mental health treatment were "relevant to proving … [Bruno] was negligent in handling his PCRA appeal and was the proximate cause in him losing that cause of action." *Id.* at 17. Fourth, he claims the information he sought regarding Bruno's correspondence with Horton's co-defendant's counsel would prove Bruno "obtained information from [the other] attorney and, negligently, spliced it together into the amended petition he filed, which caused it to be insufficient and fatally flawed." *Id.*

---

[5] Rule 4006 provides, in relevant part, a party answering interrogatories "shall serve a copy of the answers, and objections if any, within thirty days after the service of the interrogatories." Pa.R.C.P. 4006(a)(2).

Our review of a trial court order regarding discovery matters is well-settled:

The trial court is responsible for "[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure." Pennsylvania Rule of Civil Procedure 4003.1 states:

Rule 4003.1 Scope of Discovery Generally. Opinions and Contentions

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ....

(b) It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Pa.R.C.P. 4003.1(a)(b). Generally, discovery "is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried."

***PECO Energy Co. v. Ins. Co. of N. Am.***, 852 A.2d 1230, 1233 (Pa. Super. 2004).

The trial court disposed of this issue as follows:

First, [Horton] requested all documents sent to or received from the Disciplinary Board by [Bruno] before, during, and after his suspension. Since [Bruno's] disciplinary proceedings and subsequent suspension were admitted, the production of documents relating to those events were not relevant to any issue which would have affected a material part of [Horton's] cause of action. Further, this request was overbroad, given the drawn-out timeframe. Finally, the relevant documents

- 11 -

concerning the disciplinary proceedings and suspension were available to the public since November 2014.

Next, [Horton] requested all documents pertaining to in-patient or out-patient counseling and treatment of [Bruno] related to the suspension. This request was overbroad, irrelevant, and normally would not lead to admissible evidence.

Additionally, [Horton] requested all documents submitted by other complainants against [Bruno] in the same disciplinary proceedings. [Horton's] relevancy arguments for this far-reaching request did not explain how these documents could provide any relevant information to his case. This request was denied for the same reasons set forth above.

Lastly, [Horton] requested all correspondence and documents exchanged with Attorney Sondra Rodrigues related to [Bruno's] representation of [Horton]. This request was denied for the same reasons set forth in the denial of [Horton's] first request related to the disciplinary proceedings and suspension.

Trial Court Opinion, 9/16/2016, at 16.

Our review reveals no error of law or abuse of discretion committed by the trial court. First, we note Bruno's failure to respond in a timely manner to Horton's requests for the production of documents or motion to compel does not automatically entitle Horton to relief. "[T]he imposition of sanctions always is subject to a balancing test and a weighing of various factors." *McGovern v. Hosp. Serv. Ass'n of Ne. Pennsylvania*, 785 A.2d 1012, 1019 (Pa. Super. 2001).

Second, we agree with the trial court's conclusion that Horton's requests were overbroad, and much of the information he sought would have been irrelevant to the present action. Essentially, Horton sought **all** documents and records which were in any way related to the disciplinary proceedings. As the trial court explained, the "relevant documents

concerning the disciplinary proceedings and suspension were available to the public since November 2014." *Id.* In a joint stipulation of facts, Bruno admitted he failed to respond promptly (if at all) to Horton's letters and requests for information about the PCRA case, and, in doing so, violated the Pennsylvania Rules of Professional Conduct. *See* Motion Introducing Third, Fourth and Fifth New Matters, 4/29/2016, Exhibit A, Supplemental Joint Stipulation of Facts in Bruno's disciplinary proceedings, 3/20/2013, at ¶ 93 (Bruno admitting he violated Rules 1.3, 1.4(a)(3), 1.4(a)(4), 1.16(d), and 8.4(d), in his representation of Horton). However, as will be discussed *infra*, Bruno's failings do not prove he committed legal malpractice. Indeed, even "a finding of ineffectiveness is not tantamount to a finding of culpable conduct" in a legal malpractice action. *Bailey v. Tucker*, 621 A.2d 108, 115 n.14 (Pa. 1993). We agree with the trial court's conclusion that none of the information Horton requested would have proven the allegations in his complaint. Accordingly, no relief is warranted.

In his third and final claim, Horton contends the trial court erred in granting Bruno's motion for summary judgment. Specifically, he argues (1) the court's ruling was premature because it was made before Bruno was required to file an answer to Horton's motion for summary judgment, and (2) there were genuine issues of material fact in dispute.

When reviewing an order of the trial court granting summary judgment, we must bear in mind the following:

- 13 -

> Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Atcovitz v. Gulph Mills Tennis Club, Inc.,*** 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy***[ ***v. Metropolitan Life Ins. Co.***], 928 A.2d [186,] 195 [(Pa. 2007)]. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary. ***Weaver v. Lancaster Newspapers, Inc.,*** 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

***Estate of Agnew v. Ross***, 152 A.3d 247, 259 (Pa. 2017).

First, Horton argues the trial court erred in granting Bruno's motion for summary judgment before the time expired for Bruno to file an answer to Horton's motion for summary judgment. He claims the court's premature ruling was prejudicial because "it deprived him of the answers to the averments he forwarded in his summary judgment motion, which would have caused the court to rule in his favor[.]" Horton's Brief at 19.

The trial court disposed of this argument as follows:

> This court ruled on [Bruno's] motion for summary judgment after [Horton] filed his response. [Bruno] did not have to file a response to [Horton's] motion, as this court understood and was aware of the legal positions of the parties upon review and consideration of all pleadings and affidavits. There appears to be no authority on point that mandates a trial court cannot dispose of a motion for summary judgment and its subsequent response presently before the court until a non-movant filed his own motion for summary judgment and the opposing party responds.

Trial Court Opinion, 9/16/2016, at 13.

We find no basis to disagree. Horton's attempt to find statutory support for his argument in the Pennsylvania Rules of Civil Procedure fails. Although Rule 1035.3 requires an adverse party to file a response to a motion for summary judgment, and the court **may** enter judgment against a party who does not respond, the Rule does not contemplate the facts herein, where the trial court disposes of a party's motion for summary judgment while a cross summary judgment motion is pending. As the court stated above, Horton provides no support for his claim that the court's actions were improper. Moreover, the trial court was aware of all the relevant issues at the time it granted Bruno's motion. Accordingly, no relief is warranted.

Second, Horton argues the trial court erred or abused its discretion in granting Bruno's motion when material facts were in dispute. *See* Horton's Brief at 20. With regard to his assumpsit claim, Horton contends that pursuant to *Fiorentino v. Rappaport*, 693 A.2d 208 (Pa. Super. 1997), *appeal denied*, 701 A.2d 577 (Pa. 1997), once counsel and a defendant enter into an attorney/client relationship, even if the attorney is court-appointed, the client may sue for **breach of contract or negligence**. *See id.* at 21-22. Furthermore, with regard to his negligence claim, Horton maintains he "offered irrefutable proof that a) [Bruno] engaged in negligent misconduct in his representation of [Horton], and b) his negligent misconduct was the proximate cause of [Horton] losing his PCRA appeal." *Id.* at 20.

Again, our review of the record, the parties' briefs, and the relevant case law reveals Horton is entitled to no relief. First, we agree with the trial court's determination that Horton cannot maintain a breach of contract action against Bruno because Bruno was court-appointed, and "[Horton] never retained [Bruno's] services and had no contract with [Bruno]." Trial Court Opinion, 9/16/2016, at 10. *See Moore v. McComsey*, 459 A.2d 841, 844 (Pa. Super. 1983) (finding plaintiff was subject to two-year statute of limitations for negligence action in legal malpractice claim when counsel had been court-appointed and appellate court "deem[ed] it unrealistic to attempt to confer upon appellant the status of a third party beneficiary to a contract between the Commonwealth and appointed counsel."). *See also Ibn-Sadliika v. Riester*, 551 A.2d 1112, 1114 n.2 (Pa. Super. 1988) ("It has already been established that a contract of employment does not exist between a defendant and court-appointed counsel, and that a legal malpractice action against court-appointed counsel will lie only in trespass."), *citing* *Moore*, *supra*.

Moreover, Horton's reliance on *Fiorentino*, *supra*, is misplaced. In that case, the purportedly negligent attorney was **hired** by the plaintiff to represent him in a **civil action**; he was not a court-appointed attorney in a

PCRA case. This factual distinction is dispositive. Accordingly, Horton's breach of contact action fails.[6]

With regard to Horton's negligence claim, we note the Supreme Court in **Bailey**, **supra**, outlined the requisite elements for a legal malpractice action sounding in trespass:

> [W]e hold that a plaintiff seeking to bring a trespass action against a criminal defense attorney, resulting from his or her representation of the plaintiff in criminal proceedings, must establish the following elements:
>
> (1) The employment of the attorney;
>
> (2) Reckless or wanton disregard of the defendant's interest on the part of the attorney;
>
> (3) the attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, i.e., "but for" the attorney's conduct, the defendant/plaintiff would have obtained an acquittal or a complete dismissal of the charges.
>
> (4) As a result of the injury, the criminal defendant/plaintiff suffered damages.
>
> (5) Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error;

---

[6] Moreover, Horton's reliance on the Pennsylvania Supreme Court's decision in **Reese v. Danforth**, 406 A.2d 735 (Pa. 1979), is also misplaced. Horton quotes the holding of the **Reese** Court that "once the appointment of a public defender in a given case is made, his public or state function ceases and thereafter he functions purely as a private attorney concerned with servicing his client … [and] he ought to be subject to liability for tortious conduct." **Id.** at 739. However, the **Reese** Court was concerned only with an attorney's liability for negligent conduct; it did not consider whether a client may maintain a breach of contract action against a court-appointed attorney.

additionally, although such finding may be introduced into evidence in the subsequent action it shall not be dispositive of the establishment of culpable conduct in the malpractice action.

*Bailey*, *supra*, 621 A.2d at 114–115 (footnotes omitted).

In the present case, the trial court found Horton failed to establish the third prong of the *Bailey* test. The court opined:

> [T]he record fails to support the finding that [Horton] "did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein." [*Bailey*, *supra*, 621 A.2d] at 115 n.12. We find no facts from which this court could conclude that [Horton] was innocent of all the criminal charges filed against him. Nor has [Horton] pleaded and proved that [Bruno's] culpably negligent representation was the cause of the dismissal of his second PCRA petition in the sense that "but for" [Bruno's] misconduct, [Horton] would have obtained an acquittal or complete dismissal of the criminal charges. [Horton's] failure to timely raise or establish a valid after-discovered facts time bar exception to his second PCRA petition was not because of [Bruno's] negligence, but due to [Horton's] failure to raise the medical conditions defense in his first PCRA petition. *See Horton*, 48 A.3d 479 ("Since appellant's petition was untimely and no valid exception to the time bar of the PCRA exists, the PCRA court was without jurisdiction to review the petition … [T]here was nothing counsel could have done or avoided doing that would have changed the outcome."). Absent fulfillment of the third prong for legal malpractice of criminal defense attorneys, [Horton] cannot establish criminal malpractice against [Bruno].

Trial Court Opinion, 9/16/2016, at 11-12.

Again, we find no error or abuse of discretion on the part of the trial court. Horton insists the third prong of the *Bailey* test "must be modified to 'but for' the attorney's conduct, the plaintiff would have obtained an 'evidentiary hearing' or 'new trial.'" Horton's Brief at 22. He further claims the trial court should have considered "what may have happened had

- 18 -

[Bruno] not been negligent." *Id.* at 23. We disagree. The language of *Bailey* is clear: in order to obtain relief, Horton must establish Bruno's "culpable conduct was the proximate cause" of his injury, that is, "'but for' [Bruno's] conduct, [Horton] would have obtained an acquittal or a complete dismissal of the charges." *Bailey*, *supra*, 621 A.2d at 115. This, Horton failed to do.

Nevertheless, we find that even if we considered Horton's claims under the relaxed standard he proposes - that is, whether Bruno's negligence was the proximate cause of Horton's failure to obtain an evidentiary hearing – we would still conclude Horton is entitled to no relief. Horton attempted to overcome the PCRA's time bar by demonstrating the applicability of the newly discovered facts exception codified at Section 9545(b)(1)(ii).[7] This claim was based upon recently received medical records that, he asserts, demonstrates he suffered from an injury shortly before the crime that would have rendered him "unable to participate in the crime." *Horton*, *supra*, 48 A.3d 479 (unpublished memorandum at 9). In his legal malpractice complaint, Horton maintained the PCRA appellate court denied relief due, in part, to Horton's failure to substantiate that claim with actual evidence. Horton attributes the omission to Bruno's failure to obtain and attach to the

_____

[7] *See* 42 Pa.C.S. § 9545(b)(1)(ii) ("[T]he facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence").

amended petition the previously misplaced medical records, and affidavits from Horton's treating physicians. **See** Complaint, 2/26/2013, at ¶ 68(j)-(k). However, even if Bruno had secured the relevant documents, Horton would not have been able to establish a time-bar exception.

The newly discovered facts time-bar exception requires a defendant to plead and prove: "1) the *facts* upon which the claim was predicated were *unknown* and 2) could not have been ascertained by the exercise of *due diligence*." **Commonwealth v. Bennett**, 930 A.2d 1264, 1272 (Pa. 2007) (internal punctuation and citation omitted; emphasis in original). The Supreme Court has made clear that "[t]he focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008) (quotation omitted).

Here, the fact upon which Horton's PCRA claim was predicated was his knee injury, which he claims would have rendered him unable to commit the crime. However, Horton knew he had injured his knee at the time of trial. The medical records and doctor affidavits, which he contends would have corroborated his injury, constitute a "newly discovered or newly willing source for previously known facts." **Id.** **See also Commonwealth v. Johnson**, 945 A.2d 185, 190 (Pa. Super. 2008) (newly discovered witnesses willing to testify the victim owed defendant's co-conspirator money did not satisfy the newly discovered facts exception because defendant admitted that prior to trial, he knew victim owed money to his co-conspirator; thus,

- 20 -

fact was not newly discovered), *appeal denied*, 956 A.2d 433 (Pa. 2008). Therefore, because Horton could not have overcome the PCRA's time-bar even if Bruno had obtained the absent documents, Bruno's ineffectiveness was not the proximate cause of Horton's injury. Accordingly, the trial court properly granted Bruno's motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017